THE LEADER PRINTING COMPANY, (*a Corporation*) v. A. O.
NICHOLAS, *Superintendent of Public Instruction and
ex-Officio Auditor of the Territory of Oklahoma.*
(Filed September 3, 1897.)

1. PROVISO TO STATUTE—*How Construed.* A proviso or exception in
a statute relates to the paragraph or distinct portion of the
enactment which immediately precedes it, unless the contrary
intention is clearly apparent from the statute:

2. CONSTRUCTION—*Rule Applied.* Section 3 of the Act of Congress of
July 30, 1886, vol. 1, second edition, Supplement to the Revised
Statutes, provides: "That no law of any Territorial legislature
shall authorize any debt to be contracted by or on behalf
of such Territory except in the following cases:    To meet
a casual deficit in the revenues, to pay _ne interest upon the
Territorial debt, to suppress insurrections, or to provide for the
public defense, except that in addition to any indebtedness
created for such purposes, the legislature may authorize a loan
for the erection of penal, charitable or educational institutions
for such Territory, if the total indebtedness of the Territory is
not thereby made to exceed one per centum upon tne assessed
value of the taxable property in such Territory as shown by
the last general assessment for taxation.    And nothing in this
act shall be construed to prohibit the refunding of any existing
indebtedness of such Territory or of any political or municipal
corporation, county, or other sub-division therein." And it is
*held* in construing this statute, there being no contrary intention
apparent, that the limitation upon the power of the Territorial
legislature to authorize the contracting of any debt on behalf of
the Territory, and ·the prohibition against contracting' such debt
if the total indebtedness of the Territory would tnereby be made
to exceed one per centum of the assessed value of the taxable
property in the Territory, relates only to the language of the
second exception, and applies when considered with reference to
a loan for the erection of penal, charitable or educational insti-
tutions, and does not qualify the provisions contained in the first
exception to the general terms of this section, and is not ap-
plicable to a contract made to provide for the ordinary needs of
the Territory, such as the necessary printing and office supplies
for tne Territorial Auditor.
(Syllabus by the Court.)

*Original Proceeding in Mandamus.*

Original proceeding in *mandamus*, to require the defendant, as auditor of the Territory, to audit the account of plaintiff for printing, and issue the warrant of the Territory therefor. Writ granted.

*Green & Strang*, and *Asp, Shartel & Cottingham*, for plaintiff.

*Harper S. Cunningham, Attorney-General*, for the Territory.

Opinion of the court by

BIERER, J.: This is a proceeding in *mandamus* brought in this court to require the defendant, as superintendent of public instruction and *ex-officio* auditor of the Territory of Oklahoma, to audit the account of plaintiff, and issue the warrant of the Territory in the sum of $35.71, in payment of an account against the Territory for printing and office supplies for said superintendent and auditor.

The petition, which is verified, and not denied, alleges that the Leader Publishing company is a corporation organized and doing business under the laws of the Territory of Oklahoma, and that the defendant is the duly appointed, qualified and acting superintendent of public instruction, and *ex-officio* auditor of the Territory of Oklahoma. That on the 28th day of August, 1897, the plaintiff presented to the defendant, as such officer, an account against the Territory, duly verified as required by law, in the sum stated, which said account was for printing and supplies, for which payment by warrant is demanded; and that these supplies were furnished in accordance with an order of the said territorial superin-

tendent and auditor in that behalf made, and were furnished to said officer at his request, in accordance with a contract entered into by and between Hoffman & Blincoe and the governor of said Territory, in manner prescribed by law, the plaintiff being the assignee and holder of said contract, and that an appropriation was made therefor by the legislature of the Territory of Oklahoma, and that the plaintiff demanded the issuance of a warrant in payment for these supplies as is authorized by law. That the defendant admits the correctness of the account, and the amount due thereon, but refuses to issue the warrant for the reason, as stated by said officer, that by the terms of sec. 3 of the act of congress of July 30, 1886, hereafter referred to, the Territory having reached an outstanding warrant and bonded indebtedness to the full extent of one per cent. of the assessed valuation of the property in the Territory for the year 1897, no further indebtedness could be contracted, and the warrant asked for could not be issued.

Section 1, art. 1, ch. 29, Session Laws of Oklahoma, 1897, authorizes and directs the governor of the Territory to enter into a contract in the name of the Territory, with some responsible person, partnership, or corporation, to do all the printing, and stereotyping, and furnish all stationery of whatever character for the Territorial officers and the territorial institutions, and it is under this statute, it is alleged, the contract with Hoffman & Blincoe, and of which the plaintiff is the assignee, was entered into and the supplies furnished.

The refusal of the auditor to issue the warrant is based entirely upon the claim that the bill for which the warrant is demanded as payment is a debt contracted in vio-

lation of sec. 3 of the act of congress of July 30, 1886, found in vol. 1, second edition, Supplement to the Revised Statutes of the United States, page 503. This section is as follows:

"Sec. 3. That no law of any Territorial legislature shall authorize any debt to be contracted by or on behalf of such Territory except in the following cases: To meet a casual deficit in the revenues, to pay the interest upon the Territorial debt, to suppress insurrections, or to provide for the public defense, except that in addition to any indebtedness created for such purposes, the legislature may authorize a loan for the erection of penal, charitable or educational institutions for such Territory, if the total indebtedness of the Territory is not thereby made to exceed one per centum upon the assessed value of the taxable property in such Territory as shown by the last general assessment for taxation. And nothing in this act shall be construed to prohibit the refunding of any existing indebtedness of such Territory or of any political or municipal corporation, county, or other sub-division therein."

The contention is that this section limits the total indebtedness which may be contracted by the Territory, to one per centum of the assessed value of the taxable property of the Territory, as shown by the last general assessment for taxation. That this section of this act of congress is in full force and operation in this Territory, we have no doubt whatever. This court has already held that sec. 4 of this act is in force in this Territory (*Hoffman v. County Commissioners*, 3 Okla. 325,) and this section is equally operative here. The entire controversy presented in this case is determined by a construction of this congressional enactment.

The contention of the Territory is that the clause of

this section: "If the total indebtedness of the Territory is not thereby made to exceed one per centum upon the assessed value of the taxable property in such Territory as shown by the last general assessment for taxation," relates to and qualifies, and is a limitation upon the indebtedness which may be created by the Territory for all of the seven specific purposes named in this section; while the contention of the plaintiff is that it only relates to the three purposes for which a debt may be created by a loan "for the erection of penal, charitable or educational institutions," and does not qualify or limit the power of the Territory to create a debt "to meet a casual deficit in the revenues, to pay the interest upon the Territorial debt, to suppress insurrections, or to provide for the public defense."

Numerous authorities are cited in the brief of counsel for plaintiff in support of the construction which they claim should be given this statute. We are furnished no brief, and no citation of authorities, by counsel for defendant.

The statute in question is, as its title names it and its context shows, a statute of limitation upon Territorial indebtedness, and is couched in terms of prohibition against any Territorial law authorizing a debt to be contracted on behalf of the Territory, with two exceptions, the first authorizing a debt "to meet a casual deficit in the revenues, to pay the interest upon the Territorial debt, to suppress insurrections, or to provide for the public defense," and the second permitting the legislature to authorize a loan "for the erection of penal, charitable or educational institutions for such Territory," if such debt would not make the entire indebtedness of the Ter-

ritory exceed one per cent. of the assessed value of the taxable property in the Territory; and the question is whether the limitation contained upon the amount of indebtedness authorized by the last exception or proviso to the main portion of this section relates to and limits also the grant of power to create a debt for the specific purposes contained in the first exception. In other words, is the language contained in a proviso or exception to a statute to be extended beyond the words or clause which immediately precede it. The rule, we think, can be easily gathered from the text-books and adjudicated cases. In the Am. & Eng. Enc. of Law, vol. 23, p. 436, the rule is stated:

"The proviso should be confined to what immediately precedes, unless the contrary intent clearly appears; and should be construed with the section with which it is connected. This rule is not, however, absolute, and if the context requires, the proviso may be construed as a limitation extending over more than what immediately precedes, or may amount to an independent enactment."

In sec. 186, Endlich on the Interpretation of Statutes, it is stated:

"Moreover, a proviso is always to be construed with reference to the immediately prceeding parts of the clause to which it is attached and limits only the passage to which it is appended, and not the whole section or act, or, at least, only the section with which it is incorporated * * * 'The question whether a proviso in the whole or in part relates to and qualifies, restrains or operates upon the immediately preceding provisions only of the statute, or whether it must be taken to extend in the whole or in part to all the preceding matters contained in the statute, must depend, I think, upon its words and import, and not upon the division into sections that may be made for convenience of reference in

the printed copies of the statute.' Remembering the slight importance that is to be attached to the mere arbitrary divisions of statutes by the legislature itself, this rule, it seems, must still, with proper limits and caution as to the aplication of it, be deemed a reasonable one." .

In the case of *Spring v. Collector of the City of Olney,* 78 Ill. 101, the supreme court of that state had before it for construction a statute authorizing a city of that state to levy and collect taxes, and the section in question enumerated under seven distinct heads, seven distinct purposes, or classes of objects, for which taxes might be levied and collected, and the fifth was as follows: ·

"Fifth. To provide for a sinking fund or funds, for the payment of the general or special indebtedness of the city."

And the section ended with this proviso: "Provided, that no tax shall be levied under this section unless two-thirds of all the aldermen elected shall vote in favor of the same."

Of the point in controversy, and its determination, the court said:

"The point is raised upon the use of the word *section* in this proviso, it being contended that the construction must be according to the letter, that the qualification of the proviso extends to the whole section, to all of the seven sub-divisions into which it is divided, and is not to be confined to the fifth one alone. We think otherwise; that the collocation of the proviso sufficiently denotes the meaning that it should qualify the taxing power only under the fifth sub-division of the section, which was, 'to provide for a sinking fund or funds,' etc. Provisos are construed as affecting the paragraph to which they are annexed, and we are of opinion the one in question should be so construed here—to apply, not to the whole section, but only to the fifth paragraph to which it is annexed."

The syllabus of the case on this point reads:

"A proviso in a statute is construed as affecting the paragraph to which it is annexed only, and not to the whole section or act, unless the collocation of the words shows a different intention."

In the case of *Wolf v. Bauereis*, 8 Lawyers' Reports Annotated, 680, Chief Justice Alvey, speaking for the supreme court of Maryland, said:

"It is said that the function of a proviso is that of limiting and qualifying the language of the statute, and not that of enlarging or extending the act or section of which it is a part; and that a proviso should always be construed with reference to the immediately preceding part of the clause or section to which it is attached. (*Re Webb*, 24 How. Pr. 247; *Kensington v. Keith*, 2 Pa. 218; *Ex Parte Partington*, 6 Q. B. 649, 653; Endlich Interpretation of Statutes, 186.")

The syllabus of that case is in the following language:

"A proviso in a statute should always be construed with reference to the immediately preceding part of the clause or section to which it is attached."

The safe rule to be adopted, and which will admit of a broad and comprehensive construction of every statute, and place upon it. that interpretation which will give effect to the true intention of the legislature, and which has the support of these authorities, although it embraces the always important element of legislative intent not included in the principle of construction as stated in the Maryland case, is, that the language of a proviso in a section of a statute should be held to relate, not to the whole statute, or to the whole section, but only to the clause or proviso of which it is a part, unless another purpose or intention on the part of the legislative body enacting it is deducible from the enactment.

An intention on the part of congress to limit the entire indebtedness of the Territory to one per cent., we cannot draw from the language of the act, or the section under consideration. There is nothing in any other part of this act of July 30, 1886, that indicates that congress had any such intention, and the clear and express limitation upon the purpose and character of the indebtedness which the Territory may create, and the amount of indebtedness which the various municipalities in the Territory may contract, strongly rebut the idea that congress intended to make a general limitation, on a much smaller per centum basis than that fixed for these municipalities, upon the entire indebtedness to be created by the Territory. Had such an intention as that claimed by the auditor of the Territory inspired this congressional enactment, it seems to us that it would have been useless to have framed the section with two exceptions instead of one. The seven different purposes for which the Territory was authorized to contract a debt could have been framed as well in one exception, instead of two separate and distinct ones, if congress had intended that the limitation placed upon the exercise of the authority to contract debts authorized by the second exception or subdivision should be equally applicable to the first. There was no reason for framing these exceptions in two divisions, and making two classes of indebtness, unless it was intended for one class to be authorized under different conditions and limitations than those of the first. The purposes for which debts may be contracted under the first exception relate to the paramount necessities of the Territory, and congress evidently had no intention that these nec-

essities could not be supplied, and the ordinary
and necessary expenses of the Territory remain unpro-
vided for, when there was a casual deficit in the reve-
nues, or that the interest upon the Territorial debt
should not be paid, or the necessary expenses of sup-
pressing an insurrection or providing for the public de-
fense could not be met, because the Territory was in
debt one per cent. of the assessed value of the property"
therein. The purposes for which debts might be created
under the second exception, although important, are of
secondary concern to those specified in the first excep-
tion. All the necessities of the Territory relating to
penal, charitable or educational institutions can be met,
as they have been with reference to the first two of these,
thus far in the Territory, without the erection of per-
manent institutions therefor, and it was the purpose of
congress that these institutions should not be erected by
pledging the future credit of the Territory in excess of
one per cent. of the assessed value of its property. By
this second exception the Territorial legislature was per-
mitted to authorize the erection of permanent penal,
charitable or educational institutions by pledging the
future credit of the Territory in the way of a loan, but
this authority was coupled with the condition that it
could not be done if such loan made the total debt of the
Territory exceed one per cent. of the assessed value of
the property therein. Congress evidently recognized the
clear distinction, which certainly exists, between the
necessity with which the Territory might be confronted,
of making provision for meeting obligations which might
arise under the four sub-divisions of the first exception,
and the matter of the erection of permanent institutions

embraced in the three sub-divisions of the second exception, which, it was contemplated, could be done as the Territory progressed and increased in wealth, without placing upon it a burdensome debt; and it was evidently this difference in the nature of the things provided for that caused congress to place a condition under which the authority granted by the second exception could be exercised, which it did not place upon the first.

There appears, therefore, in the section, no intention to make this limitation upon the indebtedness contained in the second exception applicable also to the first, and the general rule above expressed is the proper one to apply to the statute under consideration, and we conclude that the legislature of the Territory has power to authorize the contracting of a debt on behalf of the Territory for printing done for the Territorial auditor, who is an officer of the Territory, and the legislature having authorized the making of the contract with the plaintiff, and the printing having been done and the work delivered, the plaintiff is entitled to its warrant, and the writ of *mandamus* is accordingly granted.

All the Justices concurring.