UNITED STATES v. THURSTON COUNTY et al.

(Circuit Court, D. Nebraska. September 14, 1905.)

No. 218.

INDIANS—SALE OF LANDS OF DECEASED ALLOTTEE—TAXATION OF PROCEEDS.

Under Act May 27, 1902, c. 888, § 7, 32 Stat. 245, which provides that the heirs of a deceased Indian allottee may sell the lands allotted to the decedent, subject to restrictions upon its alienation, with the approval of the Secretary of the Interior, and give full title thereto, free from such restrictions, the effect of such a sale is to terminate the trust·relation of the United States with respect to such lands, and to leave their proceeds in the hands of the heirs, subject to state and local taxation, the same as other property of citizens. Nor is such right of taxation affected by·regulations made by the Secretary of the Interior, imposing conditions to his assent to such sales with respect to the disposition of the proceeds.

In Equity. On demurrer to bill.

William H. Moody, Atty. Gen., Irving F. Baxter, U. S. Atty., and A. W. Lane, Asst. U. S. Atty.

W. E. Whitcomb and Thos. L. Sloan, for defendants.

MUNGER, District Judge. The bill in this case in substance alleges that certain Omaha Indians and certain Winnebago Indians had lands allotted to them in the state of Nebraska, under the acts of Congress of August 7, 1882 (22 Stat. 341, c. 434), and February 8, 1887 (24 Stat. 389, c. 119), and acts amendatory thereof. The law under which said allotments were made provided that the United States should hold the lands thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment should be made, or, in case of his decease, to his heirs according to the laws of the state, and that at the expiration of said period of 25 years the United States should convey the land so allotted by patent to said Indian or his heirs as aforesaid, in fee, discharged of said trust, and free from all charge or incumbrance whatsoever. The act provided that all sales or contracts of sale made by the Indian before the expiration of said 25 years should be absolutely null and void. In May, 1902, Congress passed an act (32 Stat. 245, c. 888), in the seventh section of which it was provided:

"That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser the same as if final patent without restriction upon the alienation had been issued to the allottee. All allotted lands so alienated by the heirs of an Indian allottee and all lands so patented to a white allottee shall thereupon be subject to taxation under the laws of the state or territory where the same is situate: Provided, that the sale herein provided for shall not apply to the homestead during the life of the father, mother or the minority of any child or children."

It is further alleged in the bill that by paragraph 1 of section 1 of the amended rules of the Interior Department, relating to Indian

affairs, approved October 4, 1902, as subsequently amended September, 1904, and March, 1905, it was provided:

"Owners of such inherited Indian lands desiring to sell the same may petition the Indian agent or other officer having charge, within whose territorial jurisdiction the land is situated, praying that the land therein described may be sold under said act in accordance with the regulations, and agreeing that the proceeds to be derived therefrom shall be placed in one or more national banks, to be designated by the Commissioner of Indian Affairs, and which said bank shall furnish satisfactory bonds to guaranty the safety of such deposits, to the credit of each heir in proper proportion, subject to the check of their recognized guardians, for amounts not exceeding ten dollars to each in any one month when approved by the agent or other officer in charge, and only when so approved, and for sums in excess of ten dollars per month upon the approval of such agent only when specifically authorized by the Commissioner of Indian Affairs. The petition shall be signed by all the lawful heirs, and, in case of minors, by their legal representatives, and shall set forth every material fact necessary to show full title under the laws applicable."

It is alleged in the bill that certain Indians of the Omaha and Winnebago tribes, therein named, were heirs of deceased allottees, and as such inherited allotments from deceased ancestors, which allotted lands, so descending to them, had been sold and conveyed with the approval of the Secretary of the Interior; that the proceeds derived therefrom had been deposited to the credit of each of said named Indians in the Security National Bank of Sioux City, Iowa, and were on deposit therein on April 1, 1905; that said Indians, with one exception named, were residents of Thurston county, Neb.; that the county authorities of Thurston county have for the year 1905 assessed against each of said Indians the moneys so on deposit in said bank and levied taxes thereon as upon other property. The bill is filed to restrain the enforcement of said tax and to have the same declared illegal and void. To the bill the defendants have filed a general demurrer. The case has been submitted upon stipulation of the parties, made in open court, that the decision upon the demurrer should be a final judgment in the case.

The theory upon which the government seeks to maintain the action is that as the lands which were allotted to the several deceased parties were held in trust by the United States for such allottee or his heirs and not subject to taxation, the fund derived from the sale thereof is charged with the same trust, and hence not subject to taxation. The correctness of this position determines the controversy. The Supreme Court, in Re Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, settled the doctrine that an Indian, to whom an allotment of land had been made under the act of February 8, 1887, was emancipated from federal control, and became a citizen of the United States and of the state in which he resides. The effect of this decision was to place the Indian to whom an allotment of lands had been made, so far as his personal and political rights were concerned, in the same class as other citizens. He could engage in all business pursuits, enter into contracts the same as other citizens, was amenable to the laws of the state, entitled to its protection, and subject to its burdens the same as other citizens.

Property given by the United States to any of its citizens, to

which the government retains the title and holds the same in trust until the fulfillment of certain conditions, is not subject to state taxation. This rule is so firmly settled and established that it needs no citation of authorities in support thereof. That the United States could donate to any of its citizens, whether Indian or white person, a part of its public domain, retaining the title for a period of years for the accomplishment of certain purposes, is not open to dispute. Congress gave to certain Indians allotments of land, which they could use, possess and enjoy the fruits thereof, but should not be entitled to the full ownership until the expiration of 25 years. No question can be urged against the power of Congress to dispose of the land upon such condition. It might have increased the period beyond 25 years, diminished it to 10 years or 1 year, or given the absolute fee title to the Indian without any conditions. Upon the granting by Congress to the Indian of the fee title to land without any conditions, such land unquestionably would be subject to taxation, the same as land the title to which belonged to any other citizen; or, in other words, the property of an Indian who has become a citizen of the United States under the act of Congress mentioned is subject to taxation under the laws of the state the same as like property held in like manner by any citizen of the state.

This leaves the simple inquiry as to the effect of the act of Congress of May 27, 1902, authorizing the sale of allotted lands by the heirs of a deceased allottee. The act authorizes such parties to make a sale of such land and convey a full and complete title thereto, free from the trust held by the United States. Such conveyances, however, were to be subject to the approval of the Secretary of the Interior; that is to say, a sale by such heirs did not become effective until the Secretary of the Interior approved of the sale. When he approved of the sale, the conveyance was effective and valid, and the proceeds derived from the sale became and were the absolute property of the grantors. As to such proceeds, the act did not create or reserve any trust relation between the United States and the grantors, and such property, the consideration for such sales, was subject to the jurisdiction of the state for taxing purposes the same as other property. The mere fact that the Secretary of the Interior has provided by regulation that, as a condition upon which his approval of a sale will be given, the grantor must deposit the fund in some approved bank to the credit of such grantor, to be drawn out by the depositor only upon the approval of the agent in charge of the Indian tribe, where the sum is $10 or less per month, and the approval of the Commissioner of Indian Affairs when the amount exceeds $10 per month, does not vest in the United States a trust ownership in such fund, so as to relieve it from being subject to taxation.

The case of the United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, does not announce a contrary doctrine. That case simply held that lands allotted to an Indian during the 25 years in which the title to the same was held in trust by the United States were not, nor permanent improvements placed thereon, sub-

ject to taxation. That case further decided that personal property, such as cattle, horses, and property of like character, furnished by the government to the Indian for the purpose of enabling him to conduct agricultural pursuits upon the lands so allotted, was not subject to taxation. The court, speaking with reference thereto, said:

"It was, in fact, the property of the United States, and was put into the hands of the Indians, to be used in execution of the purpose of the government in reference to them."

That case, to my mind, has no bearing upon the present case, as Congress has given the Indian the unlimited ownership and control of the proceeds of the sale of certain lands.

It is unnecessary to discuss whether the regulation of the Secretary of the Interior, which requires the grantors to deposit the funds in the bank in the manner and under conditions before stated, is a valid regulation. What Congress doubtless contemplated by the act, in providing that all sales should be subject to the approval of the Secretary of the Interior, was that if he should find that the heirs were being defrauded, were not to receive the full value of the land, and that the sale was an improvident one, they should be protected by his refusal to approve the sale. It was not the intent and purpose of Congress that the Secretary, as a condition of giving his approval, should provide that the United States should retain the fund derived from the sale, subject to the same trust relation which existed with reference to the land. Under the regulation of the Secretary of the Interior, the fund is not deposited to the credit of the United States, but is deposited to the credit of the individual Indian. If any trust relation exists between the United States and the Indian as to the fund, it is by virtue of the private contract made by the Indian, and not by virtue of the act of Congress.

I am clearly of the opinion that the United States has not such a beneficial interest in the fund in question as to exempt such fund from taxation by the state. Hence the demurrer is sustained, and the bill dismissed for want of equity.