## UNITED STATES v. BOARD OF COM'RS OF OSAGE COUNTY, OKL., et al.

## BOARD OF COM'RS OF OSAGE COUNTY, OKL., et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   August 20, 1914.)

### Nos. 4073, 4074.

TAXATION (§ 181*)—LANDS OF OSAGE INDIAN ALLOTEES—HOMESTEAD AND SURPLUS LANDS.

Act June 28, 1906, c. 3572, § 2, par. 4, 34 Stat. 541, provides that homestead lands of Osage Indian allottees "shall be inalienable and nontaxable until otherwise provided by act of Congress," and that their surplus lands "shall be inalienable for 25 years except as hereinafter provided." Paragraph 7 authorizes the Secretary of the Interior in his discretion to issue a certificate of competency to any adult member of the tribe authorizing him to sell and convey any of his lands "except his homestead, which shall remain inalienable and nontaxable for a period of 25 years or during the life of the homestead allottee."   It further provides that on the issuance of such certificate the surplus lands of the allottee "shall become subject to taxation," but that in cases where no such certificate is issued they "shall be nontaxable for the period of three years from the approval of this act," except in case of the death of the allottee. *Held*, that as to homesteads the restrictions against taxation were coextensive with those against alienation, and that in any case such lands were not taxable for 25 years, or until after the death of the allottee in case he had received a certificate of competency; that the surplus lands remained nontaxable for a period of three years, unless a certificate of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

competency was issued to the allottee or in case of his death, in either of which cases they became taxable at once.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 45; Dec. Dig. § 181.*]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the United States against the Board of County Commissioners of Osage County, Okl., and others. From the decree, both parties appeal. Affirmed.

See, also, 193 Fed. 485.

Preston A. Shinn and Isaac D. Taylor, both of Pawhuska, Okl. (Charles J. Kappler, of Washington, D. C., on the brief), for the United States.

Charles M. Cope, Co. Atty., of Pawhuska, Okl., and Charles L. Moore, Asst. Atty. Gen., of Oklahoma (Charles West, Atty. Gen., of Oklahoma, on the brief), for Board of Com'rs of Osage County, Okl., and others.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The government brought this suit to restrain the collection of taxes levied upon allotments of Osage Indians. Two classes of allotments are involved, homesteads and surplus lands. Each of these is subdivided in the bill, but in the disposition which we make of the case those differences become unimportant. The trial court held the homesteads to be nontaxable, and issued the injunction prayed, and canceled the levy as a cloud upon the title. It held surplus lands to be taxable, and denied any relief as to them. Defendants appealed from the first part of the decree, and the government from the last part.

The Osage allotments were made under the act of June 28, 1906, 34 Stat. at Large, 539. Each Indian is given three tracts of 160 acres each. Subdivision 4 of section 2 of the act then proceeds as follows:

"Each member of said tribe shall be permitted to designate which of his three selections shall be a homestead, and the same shall be inalienable and nontaxable until otherwise provided by act of Congress. The other two selections of each member, together with his share of the remaining lands allotted to the member, shall be known as surplus lands, and shall be inalienable for twenty-five years, except as hereinafter provided."

The seventh subdivision of the same section empowers the Secretary of the Interior, upon petition of any adult member of the tribe, to issue to such member a certificate of competency—

"authorizing him to sell and convey any of the lands deeded him by reason of this act, except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the homestead allottee; provided, that upon the issuance of such certificates of competency, the lands of such member, (except his or her homestead), shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control and dispose of his or her lands, the same as any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexe·

citizen of the United States; provided, that the surplus lands shall be non taxable for the period of three years from the approval of this act, except where certificates of competency are issued, or in case of the death of the allottee, unless otherwise provided by Congress."

We had the foregoing provisions of section 2 before us in the case of Aaron v. United States, 204 Fed. 943, 123 C. C. A. 265. We there held that the homesteads of Osage Indians, to whom certificates of competency had not been issued, were inalienable "until otherwise provided by act of Congress," and that the homesteads of such Indians holding certificates of competency were inalienable "for a period of twenty-five years, or during the life of the homestead allottee." We also held that this restriction was not personal to the allottee, but ran with the land. All that is said in that opinion as to the restriction against alienation applies equally to the restriction against taxation. The statute makes no distinction between the two classes of restrictions, and none can properly be made by the court. The decision of the trial court, therefore, as to homesteads, was clearly right.

Except as to Indians holding certificates of competency, as provided in subdivision 7, the last sentence of subdivision 4 makes all surplus lands allotted to Osage Indians "inalienable for twenty-five years." Because of this restriction the government urges that we should, by implication, hold the lands to be nontaxable pursuant to the doctrines declared in United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. But we cannot be governed by implications against the express language of the statute. The act shows plainly that Congress had in mind the distinction between nontaxability and nonalienability. It expressly provided that the homesteads should be inalienable and nontaxable, but as to surplus lands it is provided, in the next sentence, that they shall be "inalienable" only. The same distinction is made in subdivision 7. Not only did Congress have this distinction clearly in mind, but in the second proviso of paragraph 7 it enacted that the surplus lands shall be nontaxable *for the period of three years from the approval of this act.* The irresistible import of this language is that after the expiration of the three-year period surplus lands should be taxable; also that they would have been taxable during the three-year period had it not been for the proviso. Exceptions from a power establish the power as well as define its limits. Gibbons v. Ogden, 9 Wheat. 1, 190, 6 L. Ed. 23.

This clear import of the language of the statute is reinforced by its history. As originally introduced in the House, subdivision 4 provided that surplus lands should be "nontaxable and inalienable for twenty-five years." In the Senate numerous amendments to the statute were proposed. The Secretary of the Interior addressed a letter to C. F. Larrabee, the acting Commissioner of Indian Affairs, requesting his views upon these amendments. One of the amendments proposed to strike out the words "nontaxable and" in the last clause of subdivision 4, relating to the surplus lands. Speaking of this amendment as one which would make the "surplus lands subject to taxation," Mr. Larrabee said: "This office sees no special objection to this provision." There was also an amendment which, in the judgment of

the commissioner, would have made homesteads taxable. Speaking of both of these subjects he proceeds in his letter as follows:

"The office strongly opposes the first proposed amendment providing for the collection of taxes on the homesteads. This is in direct conflict with the provision in lines 8 and 9 on page 6, which declares that the homestead shall be inalienable and nontaxable, until otherwise provided by act of Congress. Certainly the homesteads of the Indians should be free from taxation as long as they are held in trust for the benefit of the allottees. Such has been the invariable policy of the government from the time the Indian allotments were made, and it is thought that an exception should not be made in the case of the Osages. But I see no special objection to the alternative amendment which provides merely for the payment of taxes on the surplus lands. It is believed that the Osage Indians should be required to pay taxes on their surplus lands, the same as citizens of Oklahoma Territory. There occurs to me no valid reason why the Indians should not be required to bear their share of the burden of the state and county maintenance through taxation on their surplus lands."

This letter was submitted to the Senate by the Committee on Indian Affairs in support of its proposed amendment striking out the words "nontaxable and." The amendment was agreed to, and was afterwards concurred in by the House. This seems to leave no doubt of the intent of Congress to make surplus lands taxable.

We are unable to find in the records of Congress the origin of the second proviso of the seventh subdivision, which reads as follows:

"Provided that the surplus lands shall be nontaxable for the period of three years from the approval of this act, except where certificates of competency are issued or in case of the death of the allottee."

Its purpose, however, seems to us reasonably plain. Congress first intended to suspend the taxability of surplus lands for the period of three years. From this exemption it excepted the surplus lands of Indians who died during the three-year period, or who should receive certificates of competency during that time.

We agree with the views expressed by the trial court that oil, gas, coal, and other minerals contained in allotments to Osage Indians, do not pass by the allotment or become subject to taxation. They are expressly reserved to the tribe. This restriction is imposed by the nation. No act or omission of the Indians or of state authorities can impair it. Bowling v. United States, 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080.

The decree of the trial court is affirmed.