## *HUDSON v. HOPKINS.
## McGUIRE v. McCURDY.

Nos. 9606, 9911—Opinion Filed June 17, 1919.

Rehearing Denied Sept. 9, 1919.

(Syllabus by the Court.)

**1. Taxation — Indians — Homestead — Exemption.**

In construing the second proviso of section 7 of the Act of Congress of April 18, 1912, c. 83, 37 Stat. pt. 1, p. 86, the same must be construed tantamount to an independent enactment, and it has the effect of removing the exemption from taxation on the homestead allotment of an Osage Indian, at the death of the allottee.

**2. Statutes—Effect of Proviso.**

The natural and appropriate office of a proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter.

**3. Same—Construction.**

A proviso to a section of the statute should be construed with the section of which it forms a part, and, if the context requires it, may be considered tantamount to an independent enactment.

**4. Indians—Federal Statutes—Construction.**

The acts of Congress and agreements between the various Indians have always been construed liberally in favor of the Indians.

**5. Constitutional Law—Statutes—Construction—Intent—Subsequent Enactments.**

It is a cardinal rule in the construction of constitutions and statutes that the intention of the lawmakers, when ascertained, must govern, and that to ascertain the intent all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and given effect as a whole.

**6. Taxation—Indian Allotments — Exemptions.**

But for the act of Congress of April 18, 1912, the plaintiffs in error could not have purchased the land in question. They took the land subject to the conditions of that act, which provides, "Nothing herein shall be construed to exempt any of said property from taxation." Having purchased the land by virtue of said act containing said proviso, they cannot now claim the benefits of the exemption from taxation granted to the allottees in the Osage allotment act.

Error from District Court, Osage County; R. B. Boone, Judge.

Action between J. L. Hudson and O. L. Hopkins, as county treasurer of Osage county, consolidated with action between William

---

*Appealed to the Supreme Court of the United States.

E. McGuire, as guardian of Oscar Neal and E. J. McCurdy, as county treasurer of Osage county. From judgment in each case for the county treasurer, Hudson and McGuire, as guardian, appeal. Affirmed.

Grinstead & Scott, for plaintiffs in error.

Corbett Cornett and A. R. Museller, for defendants in error.

McNEILL, J. These cases involve the question of whether, at the death of an Osage Indian, his homestead allotment becomes taxable; the plaintiff in error, J. L. Hudson, being the owner of three of said homestead allotments, having purchased the same as provided by the act of Congress of April 18, 1912. The plaintiff in error Oscar Neal inherited an undivided one-third interest in a homestead allotment of a deceased Osage, and purchased the other two-thirds of said homestead allotment from the other heirs, as provided by the act of Congress of April 18, 1912, he being a minor and not having a certificate of competency issued to him.

The cases involve the construction of the Osage Allotment Act approved June 28, 1906, c. 3572 (34 Stat. 539), as supplemented and amended by the act of April 18, 1912, c. 83, 37 Stat. pt. 1, p. 86.

Subdivision 4 of section 2 of the Osage Allotment Act, approved June 28, 1906, contains the following provision:

"Each member of said tribe shall be permitted to designate which of his three selections shall be a homestead, and his certificate of allotment and deed shall designate the same as a homestead, and the same shall be inalienable and non-taxable until otherwise provided by act of Congress."

The lands in question were homestead allotments, and homestead deeds had been issued to the allottees, which deeds contained the provision: "Shall be inalienable and nontaxable until otherwise provided by act of Congress."

April 18, 1912, Congress, by a supplementary and amendatory act, passed an act dealing with inherited lands of deceased members of the Osage Tribe of Indians. Section 1 is as follows:

"That until the inherited lands of the deceased members of the Osage Tribe of Indians shall be partitioned or sold the Secretary of the Interior be, and he hereby is authorized to pay the taxes on said land out of any money due and payable to the heirs from the segregated decedent's funds in the treasury of the United States."

Section 6 provides as follows:

"That from and after the approval of this act the lands of deceased Osage allottees, unless the heirs agree to partition the same, may be partitioned or sold upon proper order of any court of competent jurisdiction in accordance with the laws of the state of Oklahoma: Provided, that no partition or sale of the restricted lands of a deceased Osage allottee shall be valid until approved by the Secretary of the Interior. Where some of the heirs are minors, the said court shall appoint a guardian ad litem for said minors in the matter of said partition, and partition of said land shall be valid when approved by the court and the Secretary of the Interior. When the heirs of such deceased allottees have certificates of competency or are not members of the tribe, the restrictions on alienation are hereby removed. If some of the heirs are competent and others have not certificates of competency, the proceeds of such part of the sale as the competent heirs shall be entitled to shall be paid to them without the intervention of an administrator. The shares due minor heirs, including such minor Indian heirs as may not be tribal members and those Indian heirs not having certificates of competency, shall be paid into the Treasury of the United States and placed to the credit of the Indians upon the same conditions as attach to segregated shares of the Osage national fund, or with the approval of the Secretary of the Interior paid to the duly appointed guardian. The same disposition as herein provided for with reference to the proceeds of inherited lands sold shall be made of the money in the Treasury of the United States to the credit of deceased Osage allottees."

Section 7 contains the following provision:

" * * * That no lands or moneys inherited from Osage allottees shall be subject to or be taken or sold to secure the payment of any indebtedness incurred by such heir prior to the time such lands and moneys are turned over to such heirs; Provided, however, that inherited moneys shall be liable for funeral expenses and expenses of last illness of deceased Osage allottees, to be paid upon order of the county court of Osage county, state of Oklahoma: Provided, further, that nothing herein shall be construed so as to exempt any such property from liability for taxes."

It is the contention of the county treasurer that under and by virtue of the proviso contained in section 7 of the supplementary and amendatory act of April 18, 1912, which proviso is as follows, "Nothing herein shall be construed so as to exempt any of such property from liability for taxes," said lands are taxable.

It is the contention of the plaintiff in error that by virtue of the act of June 28, 1906, which provided that the homestead shall be nontaxable until otherwise provided by act of Congress, that this is a condition running with the land, and, although the same may be sold as provided by the act of April 18, 1912, still the same is nontaxable until otherwise provided by direct act of Congress.

Counsel for plaintiff in error take the further position that should the exemption from taxation not be a condition running with the land, and the defendant's position be correct, still the land would be nontaxable until the decree of partition or deed had been approved by the Secretary of the Interior, and the restriction on alienation removed, and the same should not be placed upon the tax rolls until the alienation of the land was complete or the restriction on alienation removed. As to Oscar Neal, he inherited one-third interest in the homestead allotment, and that is not subject to taxation.

This identical question was before the federal court prior to the enactment of April 18, 1912, in the case of United States v. Board of County Commissioners of Osage County (C. C.) 193 Fed. 485. In that case there was involved the right to tax the homestead allotment where the allottee was deceased, and no certificate of competency was issued to him during his lifetime or to his heirs, and the court held that the homestead allotment was not subject to taxation after the death of the allottee. The court on page 488 of 193 Fed. stated as follows:

"This court has held that the restriction against alienation of the homesteads of these allottees to whom certificates were not issued is impersonal to the allottee and applicable to the lands, disabling the heirs also to convey, and that subdivision 7 does not relate to homesteads where the certificates are not issued. United States v. Aaron (C. C.) 183 Fed. 347. The exemption should be held, regardless of the death of the allottees, to coexist with the restriction against alienation, and to continue for the same time. They are mentioned in close relation, similar reasons justify their operation for a common term, and they should be held effective therefor, in the absence of any expression to the contrary; the rule being that when Indian lands, held in severalty, are not alienable, they are not subject to taxation. Catholic Missions v. Missoula County, 200 U. S. 118, 26 Sup. Ct. 197, 50 L. Ed. 398; Goudy v. Meath, 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130; 22 Cyc. 188. When no certificates of competency issue, the homesteads, whether held by the allottees or their heirs, remain an instrumentality employed by the national government, pursuant to the constitutional power it possesses to deal with the Indians for their protection and welfare, and are not subject to taxation. United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; In re Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed, 848; United States v. Thurston County (C. C.) 140 Fed. 456. The questions presented for decision in respect of the homesteads is whether they are exempt where the allottees died without receiving certificates of competency. In the opinion of this court they are exempt, and will so remain until Congress shall remove the exemption."

This case was appealed to the Circuit Court of Appeals of the Eighth Circuit and was there affirmed. United States v. Board of County Commissioners of Osage County, 216 Fed. 883, 133 C. C. A. 87. The Circuit Court of Appeals in the opinion copied a letter from the Secretary of Interior, addressed to C. F. Larabee, Acting Secretary of Indian Affairs, requesting his view upon certain amendments which were pending in the Senate prior to the time of adopting the allotment act of 1906. One of the amendments proposed to strike out the word "nontaxable" in subdivision 4 of said act relating to surplus land. There was also an amendment which in the judgment of the commissioner would make the homestead taxable. Both of these amendments were pending, and in his letter the Secretary of Interior stated as follows:

"The office strongly opposes the first proposed amendment providing for the collection of taxes on the homesteads. This is in direct conflict with the provision in lines 8 and 9 on page 6, which declares that the homestead shall be inalienable and nontaxable until otherwise provided by act of Congress. Certainly the homesteads of the Indians should be free from taxation as long as they are held in trust for the benefit of the allottees. Such has been the invariable policy of the government from the time the Indian allotments were made, and it is thought that an exception should not be made in the case for the Osages. But I see no special objection to the alternative amendment, which provides merely for the payment of taxes on the surplus lands. It is believed that the Osage Indians should be required to pay taxes on their surplus lands, the same as citizens of Oklahoma Territory. There occurs to me no valid reason why the Indians should not be required to bear their share of the burden of the state and county maintenance through taxation on their surplus lands."

If it were not for the act of April 18, 1912, there would be no question about the decision in the case at bar, but it is necessary to ascertain the effect of the proviso contained in section 7 of the act of April 18, 1912, for it is upon the construction of this proviso in said section that this question must be determined.

This court in the case of Searcy et al. v. State, 64 Oklahoma, 167 Pac. 476, Chief Justice Sharp, delivering the opinion, stated as follows:

"The natural and proper office of a proviso is to restrain or qualify some preceding matter, and will ordinarily be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. Leader Printing Co. v. Territory, 6 Okla. 302, 50 Pac. 1001; Allen et al. v. Reed et al., 10 Okla. 105, 60 Pac. 782, 63 Pac. 867; Brewer et al. v. Rust, 20 Okla. 776, Pac. 233.

But, as said in Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755, this rule is not without its exceptions, for 'where it is plainly intended that such proviso shall limit, qualify, or define other sections or provisions of the act than that of which it forms a part, the court should give it such meaning.' The proviso should be construed in connection with the section of which it forms a part, and, if the context requires, it may be considered tantamount to an independent enactment."

In the case of United States v. Babbit, 1 Black, 55, 17 L. Ed. 94, the court there stated as follows:

"The second proviso in the third section of the act of March 22, 1852, which declares 'that no register or receiver shall receive for his services, during any year, a greater compensation than the maximum now allowed by law,' is not limited in its effect to the section where it is found, but is an independent proposition, which applies alike to all officers of this class."

In section 7 of the act of April 18, 1912, the first portion of said section deals with all lands allotted to members of the Osage Tribe, to the effect that the same shall not be incumbered or alienated nor taken or sold to secure or satisfy any debt or obligation incurred prior to the issuance of said certificate of competency. The last portion of said act deals with inherited moneys and lands of Osage Indians. In dealing with inherited lands and moneys of Osage Indians, it provides that the same shall not be taken or sold to secure the payment of any indebtedness incurred prior to the time the lands and moneys are turned over to said heirs. Said section then contains the proviso that inherited money shall be liable for funeral expenses. It then contains the further proviso, that nothing therein shall be construed so as to exempt any of said property from liability for taxation. It is plain that both provisos refer to inherited property, and the latter portion of the section to which they are attached.

The question in the case at bar is, what does the proviso mean, "that nothing herein shall be construed so as to exempt any of said property from liability for taxes"? In construing the same we think it well to look to the way and manner that Congress dealt with the Osages, prior to the enactment of this legislation, in regard to taxation. In the first instance it was provided that each Osage at the time of the allotment should have at least three selections of land, one to be the homestead, this to be inalienable and nontaxable until otherwise provided by Congress.

Surplus allotments, Congress provided, should be inalienable, unless a certificate of competency was issued to the Indian, but taxable in all cases after three years, so at the time of adopting the Act of April 18, 1912, the surplus land of an Osage to whom a certificate of competency had not issued was taxable, but inalienable. The homestead allotment was both nontaxable and inalienable. Prior to this act there was no way of selling or disposing of the homestead allotment irrespective of whether the allottee was living or deceased.

The Act of April 18, 1912, in so far as the alienation of property was concerned, dealt exclusively with inherited lands and money. It is, in our judgment, a significant fact that the act makes no distinction or difference between the right to alienate the inherited homestead allotment and the inherited surplus land, but both were made alienable in the same manner. It might be said that Congress was removing the restriction upon the inherited deceased Indian land, being both the homestead allotment and the surplus land. The restriction was not completely removed until the deed or the decree of partition was approved by the Secretary of Interior. The question then is, did Congress also intend to remove the exemption upon the inherited homestead allotment as to being taxable? If it did not, then this proviso is meaningless. It cannot be said that this proviso refers only to the surplus allotments, for the reason such lands were already subject to taxation.

In our judgment the only construction that could be given to this proviso would be that the same was intended as an independent provision and enactment, withdrawing the exemption that existed in favor of the homestead allotment of a deceased Indian, and making the same taxable, the same as surplus lands. The former act provides that the homestead should be exempt from taxation until otherwise provided by law: then Congress, in dealing with inherited lands, intended that, when the land passed out of the hands of the original allottee, the exemption from taxation was no longer necessary.

In this act Congress removed the restriction contained in homestead allotment deeds, in so far as alienation was concerned, subject, however, to be approved by the Secretary of Interior. It is not fair to presume that Congress also intended to remove the exemption as to taxation. We are not unmindful of the fact that in considering this subject the Congress of the United States has undertaken from the early history of the government to protect the Indian, as said in the case of Schock v. Sweet, 45 Okla. 51, 145 Pac. 388, the court stating as follows:

"The acts of Congress and agreements be-

tween the various Indian tribes have always been construed liberally in favor of the Indians."

In the case of Tiger v. Western Inv. Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, the court said:

"We must remember, in considering this subject, that the Congress of the United States has undertaken from the earliest history of the government to deal with the Indians as dependent people, and to legislate concerning their property with a view to their protection as such. Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L. Ed. 25; Elk v. Wilkins, 112 U. S. 94, 99, 5 Sup. Ct. 41, 28 L. Ed. 643; Stephens v. Cherokee Nation, 174 U. S. 445, 484, 19 Sup. Ct. 722, 43 L. Ed. 1041."

If we attempt to give this proviso a liberal construction, and construing it in favor of the Indian, it has no force and effect, and accomplishes no purpose whatever. If we construe with the view of ascertaining what Congress intended, and to give it the force and effect that Congress intended it to have, then it has but one construction and meaning. It certainly must have been the intent of Congress in adopting this proviso to have it accomplish some purpose, to either protect some right of the Indian, or to remove some restriction that it thought was no longer necessary. If they did not intend to remove the exemption that existed as to inherited homestead allotments, then this proviso was simply a surplus of words, and was adopted to accomplish no purpose whatever.

In construing statutes, this court has laid down the following rule: In the case of De Hasque v. Atchison, T. & S. F. R. Co., 68 Oklahoma, 173 Pac. 73, L. R. A. 1918F, 259, Chief Justice Owen, speaking for the court, stated as follows:

"It is a cardinal rule in the construction of constitutions and statutes that the intention of the lawmakers, when ascertained, must govern, and that to ascertain the intent all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and given effect as a whole."

The court in the opinion copied from the case of State v. Clark, 29 N. J. Law, 96, as follows:

"If a literal construction of the words of a statute make the act absurd, it must be so construed as to avoid the absurdity. The literal import of the terms and phrases employed will be controlled by the objects which the act was designed to reach "

In the case of Board of County Commissioners v. Alexander, 58 Okla. 128, 159 Pac 311, the court speaking through Mr. Justice Sharp said:

"When the language of the statute is dubious, the court, in construing it, will construe the reasons and intent of the law to discover its scope and true meaning."

In construing this proviso in accordance with the view expressed in the above decisions, and with the theory in mind that it was adopted to accomplish some purpose, then the only construction that can be placed upon the same is that it stands as an independent enactment, removing the exemption on the homestead allotment at the death of the allottee.

At the time of the adoption of this act where the Osage Indian had not received a certificate of competency, his lands might be divided into three classes, to wit: First. His homestead allotment, which was inalienable and nontaxable.

Second. His surplus land, which was inalienable, but subject to be sold under certain rules and regulations adopted by the Department of Interior, as provided by the act of Congress of March 3, 1909, c. 256, 35 Stat. 778. This surplus land was taxable.

Third. His inherited land. Could it be said that Congress intended to extend to the Indian a greater protection to his inherited land than it did to his surplus land?

In dealing with the Osage Indians, Congress has only attempted to exempt the homestead allotment from taxation, and we know of no valid reason why the inherited land should receive any greater protection than his surplus allotment.

There is another rule of law that must be considered, and that is the plaintiffs in error in this case are claiming the benefits of the Act of April 18, 1912, which removed the restriction on alienation in so far as this land is concerned. Can they then ignore the proviso in the same act, which states that "said property shall not be exempt from taxation?"

The Supreme Court of the United States in the case of Fink et al. v. Board of County Commissioners of Muskogee County, decided January 13, 1919, reported in 248 U. S. 399, 39 Sup. Ct. 128, 63 L. Ed. —, stated as follows:

"But for that act, they could not have purchased the lands in question. They took subject to all of the conditions of that act, and they cannot now claim the benefits of the exemption from taxation granted to the allottee by the Creek Supplemental Agreement."

This court in the case of Schock v. Sweet, supra, stated as follows:

"Hence it may well be said that it is by virtue of and through this act of Congress

that plaintiffs obtained their title. There is no exemption from taxation contained in this law; neither is any contained in the conveyances made to plaintiffs. The law is well settled that, where land is granted by a particular act, a tax exemption asserted under a prior act will not be upheld. Armstrong v. Treasurer of Athens County, 16 Pet. 281, 10 L. Ed. 965; Lord v. Town of Litchfield, 36 Conn. 117, 4 Am. Rep. 41; Southwestern R. Co. v. Wright, 116 U. S. 231, 6 Sup. Ct. 375, 29 L. Ed. 626; Wilmington & Weldon R. Co. v. Alsbrook, 146 U. S. 279, 13 Sup. Ct. 72, 36 L. Ed. 972; Ford v. Delta & Pine Land Co., 164 U. S. 662, 17 Sup. Ct. 230, 41 L. Ed. 590; Platt v. Rice, 10 Watts (Pa.) 352."

The plaintiffs in error in this case rely upon the act of 1912, which permitted them to purchase the homestead allotments. This act also provides that none of the property shall be exempt from taxation. Can they be heard to say that they will take the benefit of the law removing the restriction upon alienation, and which especially states that none of the property shall be exempt from taxation, and then be heard to say, "We will accept the benefits of the act of April 18, 1912, in so far as it relates to alienation, and permits us to acquire the land under and by virtue of that act, but we will ignore the proviso in said section which states, 'nothing shall be construed to exempt any of said property from taxation,' and in so far as taxation claim the benefits of the exemption as it existed prior to the amendment? We do not think this can be done. The plaintiffs in error accepted the act which gives them the right to purchase this land, and under which they purchased it. They must also accept the proviso to the amendment which provided that this land shall not be exempt from taxation.

In construing the law prior to the act of 1912, Judge Cotteral used the following language:

"The exemption should be held, regardless of the death of the allottees, to coexist with the restriction against alienation, and to continue for the same time. They are mentioned in close relation, similar reasons justify their operation for a common term, and they should be held effective therefore, in the absence of any expression to the contrary; the rule being that when Indian lands, held in severalty, are not alienable, they are not subject to taxation." United States v. Board of Com'rs of Osage County (C. C.) 193 Fed. 485.

So, by applying the same reasoning to the case at bar, Congress removed the restrictions upon alienation upon all inherited Indian land, subject to the deed or decree of partition being approved by the Secretary

of Interior. Then did Congress also remove the exemption from taxation that existed as to the homestead allotment at the death of the allottee? We think this is a fair interpretation to be given to said act.

The decisions of the courts in relation to taxation pertaining to the Five Civilized Tribes do not give us much assistance in the case at bar, for the reason they are all founded upon different acts of Congress and treaties. We must depend solely upon the wording and construction to be given this particular act. The first section of said act might aid in giving this section the proper construction, as Congress provided that the Secretary of Interior, prior to the time of approving the decree of partition or the deed to said land, might pay the taxes. Of course it might be argued that this only refers to the surplus allotment; but it does not so provide in the act. But it would seem a proper construction that Congress removed the exemption on homestead allotment at the death of the allottee in so far as taxation was concerned, and provided that the Secretary of Interior might pay the taxes due upon any of said land, or to be assessed against any of said land, prior to the time the decree of partition or the deed was approved.

In dealing with this case we have considered the same in reference to Osage Indians to whom a certificate of competency had not issued—neither to the allottee prior to his death, nor to his heirs thereafter; and the reference in the opinion, wherein it states it is necessary to have certain deeds or decrees of partition approved by the Secretary of the Interior, refers to deeds or decrees of partition of inherited Indian lands, where the Indian had not received a certificate of competency.

For the reasons stated, the judgment of the trial court is affirmed.

OWEN, C. J., and SHARP, PITCHFORD, and HIGGINS, JJ., concur.