AARON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 25, 1913.)

No. 3,844.

*(Syllabus by the Court.)*

**1. INDIANS (§ 15\*)—RIGHT TO ALIENATE ALLOTMENT—HEIRS OF ALLOTTEES.**

Lands of full-blood Osage Indian allottees selected by and allotted to them before their decease were inalienable by their full-blood heirs in March, 1909, under the act of June 28, 1906, c. 3572, 34 Stat. 539, 541, 542, where none of them had obtained certificates of competency.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37-44; Dec. Dig. § 15.\*]

**2. INDIANS (§ 15\*)—RIGHT TO ALIENATE HOMESTEAD—HEIRS OF ALLOTTEES.**

The homestead lands of such allottees were likewise inalienable by such heirs.

The fourth paragraph of section 2 of the act of June 28, 1906, c. 3572, 34 Stat. 541, provided that the homestead lands of Osage Indian allottees "shall be inalienable and nontaxable until otherwise provided by act of Congress." The seventh paragraph of the same section declared that the Secretary might issue to any member of the Osage tribe a certificate of competency, authorizing him to deed his lands, "except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the allottee."

*Held:* (1) Restrictions upon alienation of this character attach to and run with the land, and the inability to convey disqualifies the heir as well as the immediate allottee.

(2) The exception in paragraph 7 does not affect the restrictions upon the alienation and taxation of homesteads of Osage allottees and their heirs who obtain no certificates of competency, but is limited in its effect to the homesteads of those who procure such certificates.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37-44; Dec. Dig. § 15.\*]

**3. STATUTES (§§ 205, 206, 228\*)—CONSTRUCTION—EXCEPTION OR PROVISO—GENERAL AND SPECIAL PROVISIONS.**

An exception or proviso in a statute affects and relates to the paragraph or clause in which it is found, or to which it is annexed, only, and not to the entire statute, or to other sections, paragraphs, or clauses in it, unless a different intention or purpose on the part of the legislative body is clearly disclosed by the enactment.

General and special provisions of a statute must stand together, if possible, the former as the general law, and the latter as the law of the particular class or case.

"All the words of a law must have effect, rather than that part should perish by construction."

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 282, 283, 310; Dec. Dig. §§ 205, 206, 228.\*]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the United States against W. H. Aaron and another. From judgment for plaintiff, defendants appeal. Affirmed.

See, also, 183 Fed. 347.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John H. Burford, of Guthrie, Okl. (George B. Denison, of Vinita, Okl., and Frank B. Burford, of Guthrie,. Okl., on the brief), for appellants. .

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (Homer N. Boardman, U. S. Atty., of Oklahoma City, Okl., on the brief).

Before SANBORN, Circuit Judge, and WILLIAM H. MUNGER and TRIEBER, District Judges.

·SANBORN, Circuit Judge. The decree of which the appellants complain avoided two deeds made on March 5, 1909, by Howard Buffalo, the sole heir of Cena June, of certain lands allotted to her, prior to her decease, under the act for the division of the lands and funds of the Osage Indians, approved June 28, 1906, 34 Stat. 539, 541, 542, c. 3572, § 2, pars. 4 and 7, on the ground that these lands were then inalienable. Cena June and Howard Buffalo were full-blood. Osage Indians, neither of whom· had ever procured a certificate of competency. The question in the case is: Were the lands selected by a full-blood Osage Indian, divided by her into a homestead and surplus land and allotted to her before her decease, alienable by her full-blood Osage heir on March 5, 1909, when neither of them had obtained a certificate of competency? The answer is found in the act of June 28, 1906. The second section of that act provides that the lands of the Osage tribe shall be divided as follows: First, that each member of the tribe shall be permitted to select 160 acres of land as a first selection; third, that after each member has made his or her first selection he or she shall be permitted to make a second selection of another 160 acres of land; fourth, that after each member has made his second selection he or she shall be permitted to make a third selection of 160 acres, and that—

"each member of said tribe shall be permitted to designate which of his three selections shall be a homestead, and his certificate of allotment and deed shall designate the same as a homestead. and the same shall be inalienable and nontaxable until otherwise provided by act of Congress. The other two selections of each member, together with his share of the remaining lands allotted to the member, shall be known as surplus land and shall be inalienable for twenty-five years, except as hereinafter provided."

[1, 2] Restrictions upon alienation of this character attach to and run with the land, and the inability to convey disqualifies the heir as well as the immediate allottee. Goodrum v. Buffalo, 162 Fed. 817, 823, 827, 89 C. C. A. 525, 531, 535; Bowling v. United States, 191 Fed. 19, 21, 111 C. C. A. 561, 563. But counsel for the appellants contend that no restriction upon alienation was ever imposed upon the lands here in question, because they were nòt selected by Cena June, nor did she designate her homestead therein and thus divide them· into homestead·lands and surplus lands, nor were they allotted to her before her decease, but they were selected and allotted to her heir after her decease, so that they constitute a different class of lands from either the ·homestead lands or the surplus lands, and are thus exempt from all restrictions upon their alienation under the decisions in Mullen v. United States, 224 U. S. 448, 452, 457, 32 Sup. Ct.·494,· 56 L. Ed. 834, and Hancock v. Mutual Trust Company, 24

Okl. 391, 103 Pac. 566. A careful examination of the record, however, has satisfied that the defendants are conclusively estopped from making this claim. The complainant alleged in its bill that a described part of the lands here in controversy was allotted to Cena June "as the homestead of said Cena June, duly selected as and for such homestead," and that a described portion of them was allotted to the said Cena June "as her surplus lands." The agreed statement of facts, upon which the case was heard and the decree was founded, contained a stipulation that under the act of June 28, 1906, "Cena June, who was a duly enrolled member of the Osage tribe of Indians in Oklahoma, received as her homestead allotment the lands described and set forth as her homestead allotment in paragraph two of the amended bill," and " * * * that said Cena June was duly allotted as a member of said tribe as the lands set forth as her surplus selection in the amended bill herein." Consequently it is too late now for the appellants to claim that the selections, the designation of the homestead, and the allotments were not made until after the death of Cena June. The court below could not and did not hear or decide this case upon that theory, and this court may not. The fact that the deeds of these allotments were subsequently made to the heirs of C— ⅃ June after her decease is immaterial. When the allotments had been made, the equitable title, the right to the legal title, and the entire beneficial interest in these lands, subject to the restrictions upon alienation imposed upon them by the act of Congress at the time they were allotted, vested in the allottee, and the titles to these allotments under the subsequent deeds to her heirs related back to and took effect at the time of the allotments. There is therefore no escape from the conclusion that the titles of the heir to the homestead lands and the surplus lands of this allottee were subject to the respective restrictions imposed upon those classes of lands by the act of June 28, 1906. And this concludes the controversy about the surplus lands; for it is not claimed that the restriction imposed upon their alienation by the fourth paragraph of section 2 had been removed on March 5, 1909, when Buffalo made his deeds.

[3] It is insisted, however, that the homestead lands were relieved of the restriction upon them by the seventh paragraph of section 2 of the act and by the death of Cena June. The fourth paragraph of that section provides that the homestead lands "shall be inalienable and nontaxable until otherwise provided by act of Congress." The seventh paragraph, reads:

"That the Secretary of the Interior, in his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this act, except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the homestead allottee: * * * Provided, that upon the issuance of such certificate of competency the lands of such member (except his or her homestead) shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States: Provided, that the surplus lands shall be nontaxable for the period of three years from the

approval of this act, except when certificates of competency are issued, or in case of the death of the allottee, unless otherwise provided by Congress."

Neither Cena June nor Howard Buffalo, as has been stated, ever obtained a certificate of competency. The chief subject of the seventh paragraph of section 2 is the permissible alienation and taxation of the lands of that class of Osage allottees who obtain certificates of competency from the Secretary of the Interior. The subject of paragraph 4 is the permissible alienation and taxation of the lands of Osage Indians generally, regardless of the question whether they have certificates of competency or not. Under familiar rules these provisions of the two paragraphs must be read together, the former as the special law of the particular class of lands there treated, and the latter as the general law applicable to all classes of lands of the Osage Indians. Counsel for the appellants argue, however, that the exception in the paragraph which treats of the lands of that class of Osage Indians who obtain certificates of competency, paragraph 7, to the effect that the homestead lands shall remain inalienable for the period of 25 years, or during the lifetime of the allottee, so amends and modifies the provision of the fourth paragraph that all the lands of Osage Indians shall be inalienable and nontaxable until otherwise provided by act of Congress, that the lands of those allottees who obtain no certificates of competency are also rendered alienable at the end of 25 years, or upon the death of the respective allottees. In support of this position they cite the second proviso of paragraph 7, urge that it has the effect to render the surplus lands of Osage allottees who obtain no certificates of competency taxable upon the death of the respective allottees, and argue by analogy that the exception under consideration in the first part of paragraph 7 renders the homesteads of such allottees alienable upon their death, or at the end of 25 years. This argument is not persuasive. Paragraph 4 does not declare that the surplus lands shall be nontaxable, so that the second proviso of paragraph 7 does not treat of a subject treated in paragraph 4, and it presents no question of amendment or modification of or conflict with any of the provisions of that paragraph; while counsels' construction of the exception in the body of paragraph 7, that it renders the homestead lands of that class of Osage allottees who obtain no certificates of competency taxable and alienable at the end of 25 years, or on the death of the respective allottees, modifies the declaration of paragraph 4 that they "shall be inalienable and nontaxable until otherwise provided by act of Congress." Again, the construction that the exception in paragraph 7 renders all the homestead lands of Osage allottees alienable and taxable at the end of 25 years, or on the death of the respective allottees, renders the provision of the fourth paragraph, that they shall be nontaxable and inalienable until otherwise provided by act of Congress, ineffective and idle and flies in the face of the rule that "all the words of a law must have effect, rather than that part should perish by construction." And, finally, this interpretation violates the cardinal canon of construction that an exception or proviso in a statute affects and relates to the paragraph or clause in which it is found, or to which it is annexed, only, and not to the en-

tire statute, or to other sections, paragraphs, or clauses in it, unless a different intention and purpose on the part of the legislative body is clearly disclosed by the enactment. Thomas v. Woods, 173 Fed. 585, 595, 97 C. C. A. 535, 545, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080; Leader Printing Co. v. Nicholas, 6 Okl. 302, 50 Pac. 1001, 1003; 26 Amer. & Eng. Encyc. of Law, page 679. No other intention or purpose is deducible from this act of Congress. The true construction of the exception in the seventh paragraph is that it is limited in its effect to the homesteads of the class of Osage allottees who obtain certificates of competency—the class that is the subject of the sentence in which the exception is found. This construction is rational; it harmonizes and gives effect to all the words and terms of the act, to the provision of the fourth paragraph that the homesteads of Osage allottees are nontaxable and inalienable until otherwise provided by Congress as the general law of the subject, and to the exception in paragraph 7 as the special law applicable to the homesteads of that class of Osage allottees who obtain certificates of competency And as neither Cena June nor her heir, Howard Buffalo, were of this class, the restrictions upon the alienation of their homestead lands were not affected by that exception, those lands were inalienable on March 5, 1909, Buffalo's deed of them was void, and the decree below must be affirmed.

It is so ordered.