## ACTIONS AGAINST GOVERNMENT CONTROLLED RAILWAYS FOR TORT.

Common Pleas Court of Summit County.

ISAAC GRUIC V. THE BALTIMORE & OHIO RAILROAD COMPANY, AND WILLIAM G. McADOO AS DIRECTOR GENERAL OF THE RAILROADS OF THE UNITED STATES OF AMERICA AND INCLUDING THE SO-CALLED THE BALTIMORE & OHIO RAILROAD.

Decided, March, 1919.

*Order Making Director General of Railways—Defendant in Actions Against Railways under Federal Control—Without Force or Effect in Cases Involving Torts—Aggrieved Party can not be Compelled to Accept a Substitute Party Defendant—Constitutional Rights.*

1. The act providing for federal control of transportation systems does not invest the President with authority to release railway companies from laibility for negligence, and General Orders 50 and 50a, promulgated by the Director General of Railways and forbidding the bringing of such suits against the railway companies involved and providing that they be brought against the Director General and not otherwise, are beyond the scope of said act and without force or effect.

2. But were such not the case, the constitutional right to maintain an action for injury to the person or property would render such an order invalid.

3. And further, an action by the driver of a vehicle for personal injuries from being run down by a train is a tort, as to which the aggrieved party can not be compelled to accept a substitute party defendant.

4. But under the provisions of Section 11255 General Code, authorizing further parties defendant, the Director General upon his own application and without objection by plaintiff or the defendant railway company, may remain a party defendant in an action for personal injuries suffered on a railway under his control.

*Musser, Kimber & Huffman* of Akron, Ohio, for plaintiff.

*Allen, Waters, Young & Andress,* of Akron, Ohio, for defendants.

TREASH, J.

On December 28, 1918, plaintiff, Isaac Gruic, filed his petition in this court claiming damages for personal injuries and loss of property in the sum of $25,580, against the Baltimore & Ohio Railroad Company and the Director General of Railroads of the United States of ·America, for being struck and run into on February 4, 1918, by a train while driving a bob sled across the Tenth avenue crossing of said railroad in the city of Akron, and bases his cause of action against the defendants upon the negligence of the defendants in running their train on and over said crossing at a high and dangerous rate of speed within the corporate limits of the city of Akron, and without giving timely warning of the approach of said train to said crossing, and without maintaining gates or barriers or other means of preventing such injuries at said crossing.

The crossing is alleged to have been located in a populous and densely populated part of the city, and much frequented by triffic, and the relative positions of the surroundings grounds, streets, tracks and embankments and roads are such that a person approaching said railroad tracks is unable to hear or see a train approaching until very near said crossing.

To this petition defendant, the Director General of Railroads of the United States, has filed a demurrer on the ground and for the reason that there is a misjoinder of parties defendant.

On December 28, 1917, the President, in pursuance of the act of Congress of August 29, 1916, took control of the transportation systems of the country as a war measure, effective January 1, 1918.

March 21, 1918, Congress passed what is known as the ''federal control act'' providing for the operation of transportation systems while under federal control, for the just compensation of their owners, and for other purposes.

October 28, 1918, the Director General of Railroads, by authority of the President, issued General Order No. 50, directing that suit should no longer be maintained against the railroads, but should be brought against the Director General of Railroads alone.

January 11, 1919, an amendment made to this order known as General Order No. 50-a, was issued providing as follows:

"General Order No. 50, issued October 28, 1918, is hereby amended to read as follows:

"It is therefore ordered, that actions at law, suits is equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use control, or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against the Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures."

Under favor of this order, the Director General of Railroads of the United States files his demurrer and asks that this action be dismissed as to defendant the Baltimore & Ohio Railroad Company.

Authority for making this order is claimed under a provision of Section 10 of the railroad control act, reading as follows:

"Section 10. That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether under state or federal laws or at common law, except insofar as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President."

Two questions are presented by this demurrer:

1. Has Congress the right to enact this legislation assuming that it vests the power claimed on behalf of the defendant.

II. Does the federal control act of Congress grant this power to the President.

We will consider the latter of these questions first.

Admittedly, the chief executive has no such power unless bestowed by appropriate enactment of Congress. Whence then comes this power?

The Director General invokes that portion of Section 10 of the railroad control act passed March 24, 1918, quoted above, and maintains that the clause:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers—except insofar as may be inconsistent with any order of the President."

not only provides how the laws and liabilities of railroads may be changed, but grants unlimited powers to the President to repeal and suspend all laws and liabilities against railroads, and bar any suits against them in the courts.

In other words, the conclusion from this construction is that Congress has abdicated and surrendered to the President all its functions of lawmaking as regards the railroads, and the President acting upon this presumption has decreed through his Director General of Railroads that the railroads, while under federal control, must no longer be sued in the courts.

With this contention we can not agree.

1.   The first rule of construction of a statute is that it must be construed as a whole.  Some parts can not be selected and others disregarded.

In the language of Mr. Chief Justice White, in *VanDyke* v. *Cordova Copper Company*, 234 U. S. 188-191; 34 Sup. Cut. 884-885; 58 L. ed. 1273:

"We may not, in order to give effect to these words, virtually destroy the meaning of the entire context; that is, give them a significance which would be clearly repugnant to the statute looked at as a whole, and destructive to its obvious intent."

The various provisions of an act should be read so that all, if possible, may have their due and conjoint effect without repugnancy or inconsistency. *New Lamp Co.* v. *Ansonio Glass Co.*, 91 U. S., 656-662; 23 L. ed. 336; *Aaron* v. *U. S.*, 204 Fed. 943.

Applying this cannon of construction to the act as is our duty, how untenable is the contention claimed.

The very next sentence of Section 10 reads:

"Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government."

As if to remove all possible doubt as to the character of the control that was to be exercised by the President, Congress specifically said "Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law."

And then further as settling the question which had already been raised by the railroads, that by federal control they had been relieved of responsibility for their acts while under federal control, the statute next provided:

"and in such action at law or suit in equity against the carrier, no defense shall be made thereto on the ground that the carrier is an instrumentality or agency of the Federal Government."

This act was passed March 21, 1918. The President had already taken control of the railroads December 26, 1917, under authority of the act of August 29, 1916, and already the railroads were trying to remove actions from the state to federal courts on the ground of federal control.

The very next sentence of this section 10 provides:

"Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier."

Can it be presumed that Congress intended to grant to the President power to repeal these very definite declarations of right to sue carriers in the courts? To do so would be to eliminate all of the act after "with any order of the President."

2. Upon a reading of the whole act, it is very evident that this phrase "any order of the President" does not confer

authority and power to change the laws and liabilities of carriers, but designates *how* the power that is specifically delegated in other parts of the control act shall operate and modify the existing laws and liabilities of carriers.

The second paragraph of Section 10 designates in specific and appropriate language the laws and liabilities of common carriers which the President may make or change by his order:

"That during the period of federal control, whenever in his opinion the public interest requires, the President may initiate rates, fares, charges, classifications, regulations and practices by filing the same with the Interstate Commerce Commission, which said rates, fares, charges, classifications, regulations and practices shall not be suspended by the Commission pending final determination."

The whole act provides for "control," not for ownership.

The third paragraph of Section 10 further enlarges his authority over rates, fares, etc., but nowhere in this section or any other of the entire act, is any attempt made to grant the President authority to release the railroads from any liabilities or exempting them from answering in the courts as to their conduct.

Each separate section of this act designates clearly the power and authority of the President. The first authorizes the President to make an agreement with the railroads. The second determines what the President may do, if an agreement is made. The third determines compensation by boards or a court of claims. The fourth authorizes the President in certain contingencies to increase compensation. The fifth prohibits paying of dividends without the President's approval, and so on, but in no one of the sixteen sections is a word said giving the President authority to relieve a railroad from suit in the courts.

3. Granting that the phrase "with any order of the President" may have the intent claimed, still under the rule that when in conflict a general provision in the statute must give way to a specific provision as stated by Mr. Justice Day in *United States* v. *Stevenson*, 215 U. S. 190-197:

"The rule which excludes other remedies where a statute creates a right, and provides a special remedy for its enforcement, rests upon the presumed prohibition of all other remedies. If such prohibition is intended to reach the government in the use of known rights and remedies, the language must be clear and specific to that effect."

See also *Rogers* v. *United States,* 185 U. S., 83; *in re Anderson* 214 Fed., 662; *Colonial Navigation Co.* v. *N. Y. Co.,* 50 L.C.C. 625.

Applying this principle to the federal control act, it follows:

(a)　That Congress intended by so specifically providing to maintain the right of suit against the railroads, and did not purpose to delegate power of any nature to the President to disturb it.

(b) If Congress had intended to grant such power it would have been easy to have expressed it in appropriate language, and the omission is fatal to the presumption of the Director General.

Since then the only foundation for the Director General's order is the assumed general authority under the phrase "with any order of the President," and the right to sue is specifically provided by the act itself, it would seem necessarily to follow that the specific provision must be regarded as controlling, and the general provision must be considered as not intended to operate where specific provisions apply.

4.　The right to maintain an action for injury to personal property is a constitutional right, and Congress can not legislate away the right, and much less can they delegate such rights to another.

"A right of action to recover damages for an injury is property, and has the Legislature power to destroy such property? An executive may pardon and thus relieve a wrongdoer from the punishment the public exacts for the wrong, but neither executive nor Legislature can pardon a private wrong or relieve the wrongdoer from civil liability to the individual he has wronged."

This proposition was announced by the Supreme Court in *Angle vs Chicago, St. Paul Etc. Railway,* 151 U. S., 19; 14 Supreme Court, 247.

The plaintiff has set forth a cause of action against the defendant railroad. The demurrer for the purpose of this proceeding admits such cause of action. If the presumption of authority by the Director General in issuing his order No. 50 is correct, then the federal control act in that particular is unconstitutional and void. The result in either event is the same. We prefer to follow the rule that Congress will not be presumed to do an unconstitutional thing, and in lieu of a clear intent to grant the power claimed we must hold that none exists in the act.

5. There are other forciful reasons which lead to the same conclusion.

The only orders the President can make under the largest interpretation of the language of Section 10 are those affecting *"Laws* and *liabilities* as *common carriers."* The action in this case against the defendant railroad is not founded on the laws and liabilities of common carriers. It is not an action by a passenger or shipper or patron of the railroad against the railroad as a carrier, but of a stranger for damages for a tort, and the action rests, not on the liabilities of a carrier, but on the general laws of negligence. . Plaintiff is entitled to his day in court, and he can not be made to accept a substituted party from whom to collect his damages.

6. An individual can not maintain an action against a sovereign state without its permission. We have been unable to find any such enabling provision in the federal control act or other legislation. A proceeding against the Director General is, in substance, a suit against the United States, and accordingly can not be maintained except by express permission of the Government. *Marbury vs Madison,* 1 Cranch (U.S.), 137; *Louisiana* v. *Garfield,* 211 U. S., 70; *Louisiana* v. *McAdoo,* 234 U. S., 627; *New Mexico* v. *Lane,* 243 U. S., 52.

Whatever may be the construction placed on Section 10, it certainly contains nothing evidencing the consent of the United States to be made a party to law suits.

7. It has been suggested that that part of Section 9 reading

"and the President in addition to the powers conferred by this act, shall have and is hereby given such other and further powers

necessary or appropriate to give effect to the powers herein and heretofore conferred,'' enlarges the authority of the President. The language of this clause negatives such interpretation, because it specifically limits the President's powers to those ''herein and heretofore conferred.''

The fact that the Director General may operate the railroads, collect the income, pay expenses, and otherwise control the roads, does not necessarily mean that they can be exempted from liability on that ground, any more than on the ground that in normal times when the Government controls the rate of fare which may be charged, the use and kind of equipment, the number of hours of labor of an employee, or a hundred other regulations on carriers which the Government has seen fit to impose. The act wisely provides for adequate compensation to the carriers. If the liability which may be imposed in this case is so for which the Government should compensate it, there is an effective and adequate remedy provided for securing it, but there is no remedy or way by which a third party can sue the Government or recoup his loss, even though the Director General may try to provide one.

8. From this view of the case it would seem necessarily to follow that the Director General of Railroads must be dismissed as a party defendant herein, but since the Director General has specifically asked to be made a party in these actions, and ultimately he may have to consider any judgment rendered in the case as a part of the liabilities for which the railroad may seek compensation, and since neither the plaintiff nor the defendant railroad are objecting, there seems no good reason why he should not be permitted to remain as a party defendant in this action.

Parties other than those necessary to settle the immediate question, and yet whose rights depend on the same question, or who may be directly affected by it, may, and often should be made parties to the suit. This practice of permissive joinder of parties is especially sanctioned by Section 11255 of the General Code of Ohio: ''Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff.''

The rights of the plaintiff, however, can not be determined in an action solely against the Director General of Railroads.

Plaintiff has set forth a cause of action against the Baltimore & Ohio Railroad Company in his petition, and if he can establish it by his proof neither the President of the United States, nor his Director General, nor any other man can pardon or grant immunity to this railroad.

Accordingly, the demurrer of the defendant, the Director General of Railroads, is overruled.