THOMPSON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919. Rehearing Denied September 1, 1919.)

No. 4985.

1. POISONS ⬌2—HARRISON ANTI-NARCOTIC ACT—VALIDITY. .
Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), declaring that it shall be unlawful for any person to sell, barter, exchange, or give away enumerated narcotic drugs, except in pursuance of the written order of · the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue, but excepting physicians duly registered in the course of their professional practice, is constitutional.

2. POISONS ⬌4—HARRISON ANTI-NARCOTIC ACT.
Under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), declaring that it shall be unlawful for any person to sell, barter, exchange, or give away certain narcotic drugs, except in pursuance of a written order of the person to whom such article is sold, on a form to be issued by the Commissioner of Internal Revenue, but which excepts physicians in the course· of their professional practice, etc., it is an offense for a registered physician to sell narcotics.

3. STATUTES ⬌228—PROVISO—CONSTRUCTION.
A proviso in a statute must be strictly construed.

4. POISONS ⬌9—HARRISON ANTI-NARCOTIC ACT—EVIDENCE.
In a prosecution under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), against a physician who sold large quantities of narcotics to habitual users of the drug, medical testimony as to recognized methods among· physicians for treating persons addicted to the use of narcotic drugs was admissible, for the purpose of showing that the accused physician did not come within the exception as to physicians dispensing drugs in the course of their practice, for, while the act is in the guise of a revenue measure, it was intended to accomplish a moral purpose.

5. POISONS ⬌9—OFFENSES—EVIDENCE.
. In a prosecution against a physician for violating Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), by dispensing narcotics to habitual users of the drug, the exclusion of a letter from the Commissioner of Internal Revenue in response to a query by defendant physician as to dispensing of narcotics held proper.

6. CRIMINAL LAW ⬌1186(4)—APPEAL—HARMLESS ERROR.
In a prosecution for violating Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), exclusion of a. letter written by the Commissioner of Internal Revenue, in response to an inquiry of defendant physician as to the dispensing of narcotics, held harmless, under Judicial Code, § 269 (Comp. St. § 1246), as amended by Act Feb. 26, 1919, if erroneous.

7. CRIMINAL LAW ⬌1178—EXCEPTIONS—ABANDONMENT.
Where the only exception to the admission of evidence was that the court erred in receiving over objection prejudicial and harmful evidence, and the point was not presented either in the brief or oral argument, the matter will be deemed waived.

8. CRIMINAL LAW ⬌371(1)—EVIDENCE—OTHER OFFENSES—INTENT.
In a prosecution for violation of Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), evidence that defendant, a physician, dispensed the drug to addicts and to persons other than those specified in the indictment, is admissible to show his intent.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. POISONS ⊜➡9—OFFENSES—EVIDENCE.**

In a prosecution for violation of Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), by a physician, who dispensed the drug to many habitual users, evidence *held* sufficient to sustain a conviction.

**10. CRIMINAL LAW ⊜➡815(4)—INSTRUCTIONS—HARRISON ANTI-NARCOTIC ACT.**

In a prosecution against a physician for violation of Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), a request to charge that a physician cannot be convicted for dispensing prohibited narcotics in the treatment of a patient whose application is by letter, where the physician reduces the amount of the dose for purpose of treatment, was properly refused, because omitting the indispensable conditions that the physician must furnish the drug in good faith and keep the required record.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Bascom C. Thompson was convicted of violating Harrison Anti-Narcotic Act Dec. 17, 1914, § 2 (Comp. St. § 6287h), and he brings error. Affirmed.

Albert D. Nortoni, of St. Louis, Mo., for plaintiff in error.

Vance J. Higgs, Asst. U. S. Atty., of St. Louis, Mo. (Arthur L. Oliver, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before SANBORN, Circuit Judge, and TRIEBER and YOUMANS, District Judges.

TRIEBER, District Judge. The plaintiff in error, hereinafter referred to as the defendant, was found guilty by a jury on three counts of an indictment charging him with violations of section 2 of the Harrison Anti-Narcotic Act of December 17, 1914 (38 Stat. 786, c. 1 [section 6287h, U. S. Comp. Stat. 1918]).

There were four counts to the indictment, but by direction of the court the jury returned a verdict of not guilty on the fourth count. The counts are all in the same language, except that each charges the defendant with dispensing morphine sulphate to a different person, at a different time, and in different quantities. Each count charges that the defendant was a physician duly registered with the collector of Internal Revenue of the United States, as required by this act, as a dealer in and dispenser of opium, coca leaves, and their salts, derivatives, and compounds, and that he knowingly, willfully, and not in the course of his professional practice only, sold, bartered, dispensed, and distributed—in the first count to one Louis M. Wood, 88 grains of morphine sulphate, a derivative of opium; in the second count, 468 grains, to Mrs. William Cosgrove; and in the third count, 236 grains, to Pearl Spellman; that the sales were not made in the course of his professional practice only, nor in pursuance of a written order from the purchaser on forms issued in blank for that purpose by the Commissioner of Internal Revenue, as required by the act. Each count then proceeds to negative the other exemptions in the act, although that was unnecessary under the provisions of section 8 of the act (Comp. St. § 6287n).

[1] The defendant attacked the constitutionality of the section of the act under which the indictment was drawn by a demurrer to each

count of the indictment, again by special requests for instructions to the jury, and after the return of the verdict by a motion in arrest of judgment. The District Court sustained the constitutionality of the act.

Since the submission of this case in this court the Supreme Court in United States v. Doremus, 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493, and Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497, opinions filed March 3, 1919, sustained the constitutionality of this section. The identical questions now involved in this case were before the Supreme Court in those cases. In the Webb Case, which came before the court on certificate from the United States Circuit Court of Appeals for the Sixth Circuit, the following questions of law were certified:

(1) "Does the first sentence of section 2 of the Harrison Act prohibit retail sales of morphine by druggists to persons who have no physician's prescription, who have no order blank therefor, and who cannot obtain an order blank, because not of the class to which such blanks are allowed to be issued?"

(2) "If the answer to question 1 is in the affirmative, does this construction make unconstitutional the prohibition of such sale?"

(3) "If a practicing and registered physician issues an order for morphine to an habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but being issued for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use, is such order a physician's prescription under exception (b) of section 2?"

The court answered the first in the affirmative and the second and third in the negative. This disposes of this contention of the defendant.

There are a large number of assignments of error, but most of them are to the refusal of the court to give certain special instructions to the jury, which in effect declare the section of the act involved unconstitutional, and therefore need not be considered in this opinion.

[2] One of the grounds assigned in the demurrer was that the act does not make it an offense for a registered physician to sell the narcotics described in the act under any circumstances. Section 2 of the act clearly covers offenses charged in these counts of the indictment. It reads:

"That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue."

And then it excepts, among others, a physician duly registered, under the act, "in the course of his professional practice."

In the Doremus Case the defendant was charged, as in the instant case, with being a registered physician and had sold a quantity of heroin without a written order on a blank form issued for that purpose. A copy of the indictment in that case will be found in 246 Fed. 958. The Supreme Court, after quoting the act, held:

"It is made unlawful for any person to obtain the drugs by means of the order forms for any purpose other than the use, sale or distribution thereof

by him in the conduct of a lawful business in said drugs, or the legitimate practice of his profession.

"It is apparent that the section makes sales of these drugs unlawful except to persons who have the order forms issued by the Commissioner of Internal Revenue, and the order is required to be preserved for two years in such way as to be readily accessible to official inspection. But it is not to apply (a) to physicians, etc., dispensing and distributing the drug to patients in the course of professional practice, the physician to keep a record thereof, except in the case of personal attendance upon a patient; and (b) to the sale, dispensing, or distributing of the drugs by a dealer upon a prescription issued by a physician, etc., registered under the act."

There was no error in overruling the demurrer on this ground.

[3, 4] It is assigned as error that physicians were permitted to testify as experts as to the well-recognized methods among the medical fraternity of treating persons addicted to the use of narcotic drugs for the purpose of curing them of the habit. The ground upon which the objection is based, as stated by counsel for defendant in his brief, is:

"It was incompetent and prejudicial, for that it tended to raise an issue, even on the erroneous theory on which the case was tried, as to whether or not the plaintiff in error was practicing his profession in a legitimate manner and in good faith, while dispensing the drugs to those who, the evidence shows, admittedly applied to him for treatment as a physician."

That such evidence is admissible was decided by this court in Samuels v. United States, 232 Fed. 536, 542, 146 C. C. A. 494, Ann. Cas. 1917A, 711. See 3 Chamberlayne on Evidence, § 2425. Such evidence is not conclusive, but, as stated by the learned trial judge in his charge to the jury:

"It is competent for medical men to give in evidence their expert medical opinion touching matters within the range of the medical science with which they are familiar; but such expert medical opinion and evidence is not binding upon the jury, and is received as advisory only. The jury is therefore permitted to regard such evidence as advisory, and reckon with it in the light and experience in human affairs, and to accept it or reject it in whole or in part, as you may see fit."

Counsel rely on School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90, and Bruce v. United States, 202 Fed. 98, 120 C. C. A. 370, decided by this court. In the last-cited case, evidence of similar nature was introduced against objections, but the cause was not reversed upon that ground. It was the refusal of the court to charge the jury as requested in behalf of the defendant, as appears from the opinion. The indictment in that case was for violation of section 215 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. § 10385]), using the mails in a scheme to defraud.

The School of Magnetic Healing Case was an action to enjoin a postmaster from enforcing an order of the Postmaster General depriving the plaintiffs from using the mails; the order alleging:

"They being engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses."

The bill was dismissed by the trial judge on demurrer. It charged:

"That the plaintiffs, in their business, carried on and conducted, not only the treating of people afflicted with ills at their establishment, * * * but also engaged in the business of teaching and educating others in the practical science of healing, and that a large amount of their business consists of treatment by letter and advice to people throughout the United States and foreign countries; * * * that their business is founded largely and almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting, and remedying thereof."

In reversing the cause the court at the very beginning of the opinion stated:

"As the case arises on demurrer, all material facts averred in the bill are of course admitted."

And thereupon the court held, quoting from the headnotes:

"Such an allegation having been made in a bill of complaint, the business referred to cannot on demurrer be properly pronounced such a fraud within the statutes of the United States as will justify a postmaster withholding matter sent to complainants through the mail in answer to advertisements on an order issued by the Postmaster General under sections 3929 and 4041 of the Revised Statutes of the United States [Comp. St. §§ 7411, 7573], and section 4 of an act approved March 2, 1895, 28 Stat. 963, 964, c. 191; but in overruling the demurrer this court does not mean to preclude the defendant from showing on the trial, if he can, that the business of the complainants, as in fact conducted, amounts to a violation of such statutes.

"The statutes referred to were not intended to cover any case which the Postmaster General might regard as based on false opinions, but only cases of actual fraud in fact, in regard to which opinions formed no basis."

Neither of these cases is applicable to the facts in this cause. The good faith of the defendant treating these persons as a physician, for the purpose of curing them from the narcotic habit, is the main and only issue involved in this case.

The object of the act, although enacted under the taxing power of Congress, was no doubt intended to prevent the growing use of these narcotics, deemed a menace to the nation by Congress. In the language of Mr. Justice Holmes, in United States v. Jin Fuey Moy, 241 U. S. 394, 402, 36 Sup. Ct. 658, 659 (60 L. Ed. 1061, Ann. Cas. 1917D, 854):

"It may be assumed that the statute has a moral end as well as revenue in view, but we are of the opinion that the District Court, in treating those ends as to be reached only through a revenue measure and within the limits of a revenue measure, was right."

In United States v. Doremus, it was held:

"The act may not be declared unconstitutional because its effect may be to accomplish another purpose as well as the raising of revenue"—citing, among other cases, Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 535, 541, 19 L. Ed. 482; In re Kollock, 165 U. S. 526, 536, 17 Sup. Ct. 444, 41 L. Ed. 813; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561.

See, also, the opinion of this court in Hughes v. United States, 253 Fed. 543, —— C. C. A. ——.

If physicians and the others mentioned in the exceptions can sell and dispense these narcotics, regardless of the fact whether it is done

in good faith for the relief of a patient, then the moral object of the act is entirely defeated. It certainly cannot be claimed that a physician selling these narcotics, not in good faith, for the purpose of securing a cure of one suffering from an illness, or to cure him from the morphine habit, is doing so "in the course of his professional practice only," as prescribed by the express language of the act. A proviso must be construed strictly, and it takes no case out of the enacting clause which does not fall fairly within its meaning. It carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the words, as well as within the reason, thereof. United States v. Dickson, 40 U. S. (15 Pet.) 141, 165, 10 L. Ed. 689; Dollar Savings Bank v. United States, 86 U. S. (19 Wall.) 227, 22 L. Ed. 80; Leavenworth, etc., R. R. v. United States, 92 U. S. 733, 23 L. Ed. 634; Schlemmer v. Buffalo, etc., R. R. Co., 205 U. S. 1, 10, 27 Sup. Ct. 407, 51 L. Ed. 681; Boston Safe Deposit Co. v. Hudson, 68 Fed. 758, 15 C. C. A. 651; Aaron v. United States, 204 Fed. 943, 123 C. C. A. 265; Hopkins v. United States, 235 Fed. 95, 148 C. C. A. 589; United States v. Kansas City Southern Ry. Co. (D. C.) 189 Fed. 471, 476.

[5, 6] Did the court err in excluding the letter from the Commissioner of Internal Revenue to the defendant, in reply to a letter of inquiry made by the defendant? The questions submitted by the defendant stated facts materially differing from the evidence which had been introduced by the government in the case at bar, and on which it relied for a conviction. The questions were adroitly prepared by the defendant, so as to indicate good faith in the treatment of addicts applying to him for a cure.

Another ground upon which the letter was properly excluded is that it does not attempt to give any specific instructions or express the opinion of the Commissioner, except generally. The letter concludes:

"No inflexible rule can be rendered as to the amount of any of the narcotic drugs which may be prescribed, administered, or dispensed by a physician to a patient, as this is a matter which can be determined only by the needs of each and every individual patient."

The ruling of the court was clearly not prejudicial. Section 269 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163 [Comp. St. § 1246]), as amended by the Act of February 26, 1919, c. 48, 40 Stat. 1181, provides:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

[7-10] It is claimed that the evidence did not justify the submission of the issues to the jury, and that the court erred in refusing to direct a verdict of not guilty on each of the counts.

Louis M. Wood, the person to whom the morphine is charged to have been sold by the defendant in the first count, testified that he lived in Springfield, Ill., and was an addict; that he wrote to the defendant at Ferguson, Mo., who, he understood, was putting out a cure for

addicts; thereupon the defendant mailed him a card, on which certain questions were printed, to be answered by the addict and returned to the defendant. The answers of Wood were inserted in the blanks of the card and returned by mail to the defendant. The following is a copy of the card:

"Name: Louis M. Wood. Age 33. Post office: Springfield. County: Sangamon. State: Illinois.

"State drug used: Morphine. How long used: 14 years. By mouth or Hypo. Hypo. Amount used weekly: 120 grains or 2 Btls. Amount used daily: 17 or 18 grs. Dose per day: 4.

"Are kidneys active: Not very. Give usual weight: 190. Present weight: 175."

Shortly after mailing the card the defendant sent him 120 grains of morphine, for which he was paid $10. Every week thereafter he ordered the drug by mail, and defendant sent it to him, reducing it from 2 to 4 grains weekly, until it had been reduced to 88 grains a week, when a government agent took it from him. The same course was pursued by the defendant in selling the drug to Pearl Spellman, the person he is charged with having sold to in the third count. She resided at Terre Haute, Ind., and the application for the drug was made by her through the mails, and the drug sent to her by the defendant by express.

The sales to Mrs. William Cosgrove, the person mentioned in the second count, were made in the office of the defendant at Ferguson, Mo., where she called on him for the purpose of obtaining it. The only examination he made of her condition before selling the drug was by asking her how long she had been addicted to the use of the narcotic, and by merely looking at her arm and limb where she had been using it hypodermically, and asking how much she used. She had used from 120 to 180 grains a week at one time, and had reduced to about 70 grains when she called on the defendant. He then sold her 70 grains. That was the only time he ever saw her personally, as she then returned to her home in Toledo, Ohio, where he sent her the drug every week by express, reducing it gradually to 65 grains a week. In none of the cases were the addicts required by the defendant to be confined, so as to prevent them from securing the drug elsewhere. Wood secured more of the drug from the defendant than he required, and saved some of it for future use, in case he should be unable to secure it from the defendant at a later time.

The physicians, introduced on the part of the defendant, Dr. Morris and Dr. Tyzzer, both testified—Dr. Morris, that "if morphine can be bought by the addict, no doctor would attempt to treat him by the reduction method, unless he confined him;" Dr. Tyzzer that "it is best that the patient should be confined in order to effect a cure," adding, "but if he really follows the directions, and does his part, the result would be the same," meaning that, if he would reduce the use of the narcotic as prescribed, then the result would be the same, although not confined. He also testified that, "if the person is a morphine addict, his will power is broken, and he cannot rely on his own action for any length of time." The physicians introduced by the

government all testified to the same effect, that unless confined an addict is never cured of the habit.

A number of other witnesses testified to having purchased narcotics from the defendant, without personally attending them. He sent it to them by express, they living in other states. Objections to their testimony were made and overruled. The only objection made to the testimony of these witnesses was that they were not named in the indictment; counsel for defendant saying:

"I just want to say that we had no notice of these witnesses. Whether our point is worth anything or not, I want to get it in."

This point was not presented by counsel in this court, either in his brief or in the oral argument, and the only reference to it in the assignment of error is:

"That the court erred in receiving, over defendant's objection and exception, prejudicial and harmful evidence introduced by the United States."

We may well treat this exception as abandoned, but even if it had been properly assigned as error, and insisted on in this court, it would not be error. Such evidence is admissible for the purpose of establishing the intent and bad faith of the defendant. Allis v. United States, 155 U. S. 117, 119, 15 Sup. Ct. 36, 39 L. Ed. 91; New York Mutual Life Insurance Co. v. Armstrong, 117 U. S. 591, 598, 6 Sup. Ct. 877, 29 L. Ed. 997; Moffatt v. United States, 232 Fed. 522, 533, 146 C. C. A. 489. The court in its charge limited this testimony to the question of the good faith solely. It charged:

"Evidence was offered and admitted in the course of the trial tending to prove sales of the drug by the defendant to persons other than those mentioned in the indictment. With respect to that, the court instructs you that, even if you believe from the evidence that the accused did sell and dispense morphine sulphate to persons other than those mentioned in the indictment, not in the course of his professional practice only, you cannot convict the defendant therefor; but you may consider such other sales, if such there were, in determining the intent, or system, or knowledge on the part of the defendant in selling to the persons set out in the indictment."

All the special requests for instructions to the jury, except those which requested the court to charge that the act, so far as it applies to the defendant was unconstitutional, were included in the court's charge, except request No. 11. That request was to the effect that under the act of Congress a physician cannot be convicted for dispensing the prohibited narcotics in the treatment of a patient, whose application is made by letter, and although the physician never comes in personal contact with such patient, provided he reduced the amount on each succeeding shipment of morphine, and furnished the morphine to the person mentioned, as in treatment for a morphine habit, in the course of his professional practice only. This request is in conflict with the act. It lacks two indispensable conditions: First, that the physician furnished the drug in good faith; and, second, that he made and kept the record required by subdivision "a" of section 6287h, U. S. Comp. Stat. 1918.

The evidence shows that the defendant has obtained an extended reputation as a dispenser of morphine sulphate. Addicts from dif-

ferent states would apply to him, and generally through the mails, and without any examination, or even seeing them, the defendant sent it to them. The slight reductions in the weekly sales were evidently merely a subterfuge for the purpose of evading the law. None of the purchasers was ever examined by him, as any reputable physician would naturally do when undertaking the treatment of a person for the purpose of effecting a cure.

Willie Brown and Mamie Nunley each purchased 120 grains weekly, although neither of them was an addict. Brown purchased it for the purpose of peddling it, and Mamie Nunley for Maude Kobein, an addict, in order to make up for the decreasing doses.

Morris Chase, who resided at Terre Haute, Ind., and whom the defendant never saw, obtained it on orders through the mails, and paid him $5 a week for the drugs sent, amounting in the aggregate to $220. His case the defendant never diagnosed. He testified that, when the doses were reduced, he ordered it through the mails in fictitious names, and obtained it in that way.

Chas. Blaker, another witness, testified that he obtained the drug from the defendant seven times, and about half a dozen times he obtained it by sending others for it.

It was also shown in evidence that from February 7, 1916, to October 24, 1916, defendant purchased 270,000 grains of morphine, close to 630 ounces. A number of other witnesses testified to purchases in the same manner, as those of whose testimony extracts have been made. Among them was Jack Barrett, who testified he obtained morphine from the defendant. He obtained it by writing to him from Terre Haute, without ever having been seen by him.

The evidence fails to show that a charge for professional services was ever made by the defendant, only the exorbitant price for the drug was collected.

A careful reading of the testimony convinces beyond a doubt that the defendant, under the cloak of a practicing physician, sold narcotics, and not in the regular practice of his profession, for the purpose of curing addicts, and it was the duty of the court to submit the issues of fact to the jury, whose finding is conclusive in this court. As we find no prejudicial error, the judgment is affirmed.