### SIMS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1920. Rehearing Denied December 6, 1920.)

No. 5475.

1. **Criminal law ☞1036(1)—Objections to evidence must be made at the trial.**

In prosecution of physician for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) by selling morphine without a dealer's license, the defense being that the morphine was given in good faith as part of morphine habit treatment, testimony by government officers that when they searched accused's office they found eight or ten bottles of morphine and three or four bottles of cocaine, being pertinent as to whether accused was dealing in the drugs, was not open to the objection on appeal that it was inadmissible, because the search was unlawful, where no such objection was made at the trial.

2. **Poisons ☞9—Record of disposition of narcotics admissible.**

In prosecution of physician for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) by selling morphine without a dealer's license, the defense being that the morphine was given in good faith as part of morphine habit treatment, it was proper for accused on cross-examination to be required to exhibit the record of his disposition of narcotics, it being the record required by law to be kept, as the testimony was competent on the issues both of good faith and of the character of business conducted by accused.

3. **Criminal law ☞1038(1), 1056(1), 1129(1)—Vocal emphasis of certain word in instructing jury not reviewable, in the absence of trial objection, exception, or assignment of error.**

In prosecution of physician for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) by selling morphine without a dealer's license, the defense being that the morphine was given in good faith as part of morphine habit treatment, the appellate court will not consider the objection that the trial court placed peculiar emphasis or stress upon the word "dealer" in his instructions to the jury, where no such objection or exception appeared at the trial or in the assignments of error, and the appellate court is given no basis from which to determine the existence or measure of such verbal stress.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Joseph W. Woodrough, Judge.

W. H. Sims was convicted of violating the Harrison Anti-Narcotic Law, and brings error. Affirmed.

H. T. Walker, of Muskogee, Okl., for plaintiff in error.

Foster V. Phipps, Sp. Asst. U. S. Atty., of Muskogee, Okl. (Archibald Bonds, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

STONE, Circuit Judge. Error from conviction for violating section 2 of the Harrison Anti-Narcotic Law (38 Stat. 785 [Comp. St. § 6287h]). The assignments of error are based upon the overruling of a motion to quash the indictment, the admission of evidence, insufficiency of the evidence to sustain conviction, and error in the charge to the jury.

The motion to quash was founded on the claim of invalidity of the Harrison Act. Every contention presented in support of the motion is answered by the cases of United States v. Doremus, 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493, Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. E. 497, Thompson v. United States, 258 Fed. 196, 169 C. C. A. 264 (8th C. C. A.), and Hughes v. United States, 253 Fed. 543, 165 C. C. A. 213 (8th C. C. A.).

The rulings upon evidence claimed to have been erroneously admitted will be better understood, if a brief summary of the issues and the evidence in the case is made. The indictment was in two counts—the first charging that Sims, without license as a dealer in morphine, sold divers unknown persons morphine between July 1, 1918, and November 1, 1918; the second charging sale, without license as a dealer of morphine, to J. C. Lamar on August 28, 1918. The first count was withdrawn by the charge. Conviction was upon the second count.

[1, 2] Sims was a colored man practicing medicine at Muskogee. Sims had a government license to dispense such drugs as a physician in his practice, but none as a dealer. Noting that Sims was purchasing large quantities of morphine and opium derivatives from druggists, an anti-narcotic inspector suspected that he was unlawfully using them. This inspector secured the services of J. C. Lamar, a morphine addict. This inspector, accompanied by another inspector and a deputy marshal, searched Lamar and ascertained that he had no drugs with him. They then gave him $15 in marked money and kept him in view constantly until he entered the stairway leading to Sims' office. In five or ten minutes Lamar returned with a sealed bottle containing about 55 grains of morphine, which was taken from him, marked for identification, and retained by one of the inspectors until the trial. After procuring the morphine from Lamar, the officers went up at once into Sims' office and found him in possession of the marked money. Sims admitted on the stand giving Lamar a bottle containing about 55 grains of morphine and receiving $15 from him. His defense was that Lamar had come to him for treatment for the morphine habit, and that the morphine was given for that purpose only, and the money received as part payment for the treatment. The explanation of the large quantity of morphine was that Lamar represented that he would be away from town for several days, and this quantity was to cover the period of absence. The method of treatment was by progressively reducing the average consumption by one grain a day until the patient was reduced to one or two grains a day, when an inten-

sive treatment of baths, purgatives, and other drugs was to be employed for a few hours. Lamar swore that there was no understanding nor arrangement for any treatment, but that he simply bought the drug. Sims swore that he questioned Lamar as to his age, length of drug habit, and average daily consumption. The broad issue thus presented to the jury was whether Sims had given the morphine to Lamar as part of a treatment in good faith for the morphine habit.

With the foregoing outline in mind, consideration will be now given to the evidence claimed to have been erroneously admitted. The first objection goes to the identification by Lamar of the bottle of morphine received from Sims. This identification was clear, positive, and unshaken on cross-examination. Not only Lamar, but the officers, positively identified the bottle and contents which had been bought and remained under seal. Besides, Sims admitted giving Lamar at that time that amount of morphine in a bottle.

Another assignment is that Lamar was permitted to testify as to the plan between him and the officers as to the trip to Sims' office. This objection is frivolous.

Another assignment is that the officers were permitted to testify that, when they went up to Sims' office, they searched it and found eight or ten bottles of morphine and three or four bottles of cocaine. This was pertinent upon the question of whether Sims was dealing in the drugs. The objection that this search was unlawful comes too late to affect the admissibility of this testimony, since no such objection was made at the trial.

Another assignment is the refusal of the court to strike out an answer by the deputy marshal to the effect that the addicts who went to Sims were "both male and female and white and black." The claim advanced is that this aroused race prejudice, and ruled the verdict. We find no basis whatsoever for this claim in any part of this record.

The final assignment as to admission of evidence is that Sims, on cross-examination, was required to exhibit the record of his disposition of narcotics. This was the record required by law to be kept. Whatever the weight of this testimony, its competency is clear on the issues both of good faith and of the character of business conducted by Sims.

The assignments that the verdict is contrary to the law and evidence and based upon insufficient evidence are not sound. The issue of fact was clear-cut, and supported by substantial testimony. The claim that the verdict was the result of race prejudice is unfounded.

[3] The charge is assailed because (as stated in the printed argument) "of the peculiar emphasis, utterance, stress, or force which the court placed upon the word 'dealer' in his instructions to the jury. This emphasis or stress of voice by the court doubtless called the jury's special attention to the idea of a 'dealer' in this case to the detriment of the rights of the defendant." No such objection or exception appears at the trial or in the assignment of errors, and we are given no basis from which to determine the existence or measure of this *verbal* stress.

The final assignment urged here is a refusal of a request to charge as to the criminal intent. This matter was abundantly covered in the charge given.

The judgment is affirmed.