## BRUNO v. UNITED STATES.

(Circuit Court of Appeals. First Circuit. June 4, 1923.)

No. 1593.

**1. Customs duties ⬤123—Intoxicating liquors are still "merchandise," within customs laws.**

Even since the enactment of the National Prohibition Act, prohibiting the importation of intoxicating liquors, such liquors, whether intended for beverage, nonbeverage, or sacramental purposes, are "merchandise," within Rev. St. §§ 2806–2809, 2872, 3082 (Comp. St. §§ 5503–5506, 5563, 5785), prohibiting unlawful importation of merchandise, in view of Rev.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

St. § 2766 (Comp. St. § 5462), defining merchandise as goods, wares, and chattels of every description capable of being imported.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchandise.]

2. **Customs duties** ⊜121—**National Prohibition Act superseded prohibition of unlawful importation of intoxicating liquors.**

Rev. St. §§ 2806–2809, 2872 (Comp. St. §§ 5503–5506, 5563), regulating the importation of merchandise, and Rev. St. § 3082 (Comp. St. § 5785), imposing a penalty for importing merchandise contrary to law, were superseded by National Prohibition Act, tit. 2, § 3, which prohibited the importation of intoxicating liquors, and section 29, which imposed a penalty for a violation of the act, which was less than the penalty imposed by Rev. St. § 3082, for unlawful importation.

3. **Internal revenue** ⊜2—**Laws relating to manufacture and sale of liquors have been re-enacted.**

The sections of the internal revenue laws relating to manufacture and sale of intoxicating liquors, which were superseded by the National Prohibition Act, were re-enacted by Act Nov. 23, 1921, § 5, providing that all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, should continue in force.

4. **Customs duties** ⊜123—**Importing of liquors is not "traffic," within statute re-enacting previous law.**

The importation of intoxicating liquors is not "traffic" in such liquor, within Act Nov. 23, 1921, § 5, re-enacting previous laws relating to the manufacture and taxation of and traffic in intoxicating liquor, since "traffic" is commerce, either by barter, or by buying and selling, and means the passing of goods or money, and therefore the customs laws, which had been superseded by the National Prohibition Act, so far as they related to importation of intoxicating liquor, were not re-enacted by the act of 1921.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Traffic—Trafficking.]

5. **Customs duties** ⊜129—**Penalty for unlawful importation relates to other provisions of customs laws than National Prohibition Act.**

Rev. St. § 3082 (Comp. St. § 5785), imposing a penalty for importation of merchandise contrary to law, relates to importation which was unlawful under other provisions of the customs laws, and not to that which was unlawful only under the National Prohibition Act.

6. **Criminal law** ⊜878(2), 1144(14, 16)—**General verdict presumed to have been based on all counts, under proper instructions.**

As a rule, it is presumed that the jury were instructed to pass on all the counts of indictment, and based their verdict thereon, so that a general verdict can be sustained, if any count in the indictment is good.

7. **Criminal law** ⊜1144(16)—**Instruction held to overcome presumption general verdict was based on all counts.**

Where an indictment contained three counts, the first two of which were insufficient, and charged an offense different from that charged in the third count, and the court instructed the jury that they might find the defendants guilty on all or any of the three counts, that they could find a general verdict of guilty, and such verdict would be upheld in the way of pleading, if any of the counts in the indictment was good, it cannot be presumed that the general verdict was based on the third count, which was good, and therefore the conviction must be reversed.

Anderson, Circuit Judge, dissenting.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Massachusetts; John A. Peters, Judge.

Filippo Bruno was convicted under an indictment charging unlawful importation of merchandise and conspiracy to import such merchandise, and he brings error. Reversed, and remanded for a new trial.

G. Philip Wardner, of Boston, Mass. (Joseph T. Zottoli, of Boston, Mass., on the brief), for plaintiff in error.

Charles P. Curtis, Jr., Sp. Asst. U. S. Atty., of Boston, Mass. (Robert O. Harris, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The plaintiff in error, Filippo Bruno, hereinafter called the defendant, was indicted with five other persons in the District Court of the United States for the District of Massachusetts. The indictment contained three counts. Bruno and four of the defendants pleaded not guilty. The other defendant was not arrested or arraigned. A trial was had before a jury, and a general verdict of guilty was returned against Bruno, Amero, and Tony Carbone. The other two defendants were discharged. Amero and Tony Carbone were each sentenced to pay a fine of $500. Bruno was sentenced to pay a fine of $2,000 and be imprisoned in the House of Correction at Plymouth, Mass., for the term of four months.

The first count was brought under section 3082 of Revised Statutes (Comp. St. § 5785), and charged that the defendants, between the 22d and 28th days of December, 1921, unlawfully imported and brought, and unlawfully assisted in importing and bringing, into the United States, at or near Boston and Plymouth, in the District of Massachusetts, from a foreign port (the island of Miquelon and St. Pierre), certain merchandise, to wit, about 2,200 gallons of alcohol, of the value of about $7,000, contrary to law, in that they had imported and brought the liquors into the United States and unladen and delivered them within the United States without a permit for the importation of said merchandise, without a permit for its unloading and delivery, without payng the lawful customs duty thereon, and without a manifest as required by law, and contrary to sections 2806, 2807, 2808, 2809, and 2872 of the Revised Statutes (Comp. St. §§ 5503–5506, 5563), and section 3 of title 2 of the Act of October 28, 1919, entitled the National Prohibition Act (41 Stat. 305).

The only material difference between the first and second counts is that in the first the Golden West is named as the vessel in which the merchandise was transported from said islands to the point or points off the coast of the Massachusetts district, whereas in the second count the name of the vessel by which the merchandise was so transported was omitted.

The third count was brought under section 37 of the Criminal Code (Comp. St. § 10201), and charged that Bruno and the other defendants, during the months of November and December, 1921, in said district and elsewhere did willfully and feloniously conspire together and—

"with one J. B. Legasse and a certain Italian called Jim, and with divers other persons, * * * to commit certain offenses against the United States, to wit, to violate sections 2806, 2807, 2808, 2809, and 2872 of the Revised Statutes, and section 3 of title 2 of the Act of October 28, 1919, entitled the National Prohibition Act in this:

"That it was the purpose and object of the said conspiracy * * * to bring and cause to be brought certain merchandise, to wit, alcohol and other intoxicating liquors, from the island of Miquelon and St. Pierre, of the republic of France, in a schooner, called the Golden West, to Massachusetts Bay, off the coast of the said district,"

and thence by other vessels to secretly and clandestinely import and cause to be imported said merchandise into the Massachusetts district, to secretly and clandestinely unlade and deliver, and cause it there to be unladen and delivered, without a permit as required by law for its importation, and without a permit as required by law for its unlading and delivery, and without paying the lawful customs duty thereon, and without a manifest as required by law. It then set out certain overt acts done in furtherance of the conspiracy.

As counts 1 and 2 are based upon section 3082, the position of the government is that sections 2806, 2807, 2808, 2809, 2872 of the Revised Statutes, and section 3, title 2, of the Act of October 28, 1919, recited in said counts, define the acts relied upon as "contrary to law," within the meaning of that phrase as used in section 3082. Keck v. United States, 172 U. S. 434, 437, 19 Sup. Ct. 254, 43 L. Ed. 505.

Section 3082 (Comp. St. § 5785) reads as follows:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist, in so doing, any merchandise, contrary to law, * * * such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both."

Section 2806 (Comp. St. § 5503) provides:

"No merchandise shall be brought into the United States, from any foreign port, in any vessel unless the master has on board manifests in writing of the cargo, signed by such master."

Section 2807 (Comp. St. § 5504) prescribes what every manifest required by the preceding section shall contain.

Section 2808 (Comp. St. § 5505) provides:

"If merchandise shall be imported, destined to be delivered in different districts or ports, the quantities and packages so destined to be delivered shall be inserted in successive order in the manifest; and all spirits and wines constituting the whole or any part of the cargo of any vessel shall also be inserted in successive order, distinguishing the ports to which the same may be destined, and the kinds, qualities, and quantites thereof."

Section 2809 (Comp. St. § 5506) provides:

"If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers or crew of such vessel shall be forfeited."

Section 2872 (Comp. St. § 5563) provides:

"Except as authorized by the preceding section, no merchandise brought in any vessel from any foreign port shall be unladen or delivered from such vessel within the United States but in open day—that is to say, between the rising and setting of the sun—except by special license from the collector of the port, and naval officer of the same, where there is one, for that purpose, nor at any time without a permit from the collector, and naval officer, if any, for such unlading or delivery."

Section 3 of title 2 of the National Prohibition Act provides:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.

"Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as herein provided, and the commissioner may, upon application, issue permits therefor," etc.

Section 29 of title 2 of the National Prohibition Act provides:

"Any person who manufactures or sells liquor in violation of this title shall for a first offense be fined not more than $1,000, or imprisoned not exceeding six months, and for a second or subsequent offense shall be fined not less than $200 nor more than $2,000 and be imprisoned not less than one month nor more than five years.

"Any person violating the provisions of any permit, or who makes any false record, report, or affidavit required by this title, or violates any of the provisions of this title, for which offense a special penalty is not prescribed, shall be fined for a first offense not more than $500; for a second offense not less than $100 nor more than $1,000, or be imprisoned not more than ninety days; for any subsequent offense he shall be fined not less than $500 and be imprisoned not less than three months nor more than two years," etc.

It is contended by the defendant that, since the enactment of the National Prohibition Act, the importation of liquor for beverage purposes is absolutely prohibited and that its importation for nonbeverage and sacramental purposes is forbidden, except as in the act provided and upon a permit obtained from the Commissioner of Internal Revenue, that, as intoxicating liquors for beverage purposes, and for nonbeverage and sacramental purposes where no permit has been obtained, are excluded from importation, they are not now merchandise within the meaning of our customs laws, and particularly the sections set out in counts 1 and 2 of the indictment. In the same connection he further contends that sections 3 and 29 of title 2 of the National Prohibition Act supersede sections 2806, 2807, 2808, 2809, 2872, and 3082 in respect to intoxicating liquors imported in violation of law, and that therefore the defendant could not be legally convicted on either of the first two counts.

[1] We think the first contention cannot be sustained, as we regard intoxicating liquors, whether intended for beverage, nonbeverage or sacramental purposes, as merchandise within the meaning of the sections of the customs laws above enumerated. Section 2766 of the Revised Statutes (Comp. St. § 5462), in defining the word "merchandise" as used in the customs laws, says:

"The word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported."

And this provision, as construed by the federal courts since the enactment of the federal Prohibition Act, has been held to embrace intoxicating liquors, even though their importation is prohibited. United States v. Santini (C. C. A.) 279 Fed. 534; United States v. Bengochea (C. C. A.) 279 Fed. 537.

[2] Were sections 2806, 2807, 2808, 2809, 2872, and 3082 superseded by sections 3 and 29 of title 2 of the National Prohibition Act in respect to intoxicating liquors imported for beverage purposes, or for nonbeverage or sacramental purposes without a permit, so that the defendant could not be legally convicted on either of the first two counts? Whether the liquors in question were brought into the country for beverage purposes, or for nonbeverage or sacramental purposes without a permit, their importation was a violation of section 3 of title 2 of the National Prohibition Act, which would subject an offender to a fine of not more than $500 for a first offense. See section 29. Under section 3082 of the customs laws a fine not exceeding $5,000, or imprisonment no exceeding two years, or both, could be imposed, and the defendant in this case was in fact sentenced to pay a fine of $2,000 and be imprisoned for a term of four months. In view of the legislation of Congress on this subject, we have little difficulty in reaching the conclusion that sections 3 and 29 of title 2 superseded the sections of the customs laws here in question in respect to the importation of intoxicating liquors for beverage purposes, or for nonbeverage and sacramental purposes without a permit, as it is unreasonable to suppose that Congress could have intended that an offender against section 3 (the later law) should be punished for practically the same acts under the provisions of section 3082, which authorizes the imposition of a greater punishment than that provided by section 29. And such was the conclusion of the Supreme Court in United States v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043, where sections 3247, 3279, 3281, and 3282 of the Revised Statutes, being provisions of the internal revenue laws relating to the manufacture and sale of intoxicating liquor and imposing a punishment greater than that imposed by title 2, were under consideration. It was there said:

"It is, of course, settled that repeals by implication are not favored. It is equally well settled that a later statute repeals former ones when clearly inconsistent with the earlier enactments. United States v. Tynen, 11 Wall. 88. In construing penal statutes, it is the rule that later enactments repeal former ones, practically covering the same acts, but fixing a lesser penalty. The concluding phrase of section 35, by itself considered, is strongly indicative of an intention to retain the old laws. But this section must be interpreted in view of the constitutional provision contained in the Eighteenth Amendment, and in view of the provisions of the Volstead Act intended to make that amendment effective. * * * We agree with the court below that, while Congress manifested an intention to tax liquors illegally as well as those legally produced, which was within its constitutional power, it did not intend to preserve the old penalties prescribed in section 3257 in addition to the specific provision for punishment made in the Volstead Act."

After United States v. Yuginovich was decided, Congress, on November 23, 1921, enacted the following provision of law:

"All laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and nonbeverage liquors, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act; but if any act is a violation of any of such laws and also of the National Prohibition Act or of this act, a conviction for such act or offense under one shall be a bar to prosecution therefor under the other." 42 Stat. at Large, c. 134, § 5, pp. 222, 223.

Since the enactment of section 5 on November 23, 1921, indictments based on violations of sections 3281 and 3282, Rev. St. (Comp. St. §§ 6021, 6022), as well as other sections of the internal revenue laws relating to the manufacture and taxation of intoxicating liquors, have been before the Supreme Court in the case of United States v. Stafoff, 43 Sup. Ct. 197, 67 L. Ed. ——, decided January 2, 1923, in which it was held (1) that the decision in United States v. Yuginovich must stand for the law before November 23, 1921, the date of the enactment of section 5 of chapter 134; and (2) that since that time the Act of November 23, 1921, has "the same operation as if, instead of saying that the laws referred to shall continue in force, it had enacted them in terms," and that "for offenses committed after the new law, United States v. Yuginovich cannot be relied upon."

[3] If the sections of the customs laws upon which counts 1 and 2 are based in part related to the manufacture and sale of intoxicating liquor, as did those considered by the Supreme Court in the two cases above named, there could be no doubt that the Act of November 23, 1921, reinstated those sections and left it open to the government to prosecute the defendant either under the customs laws or under the National Prohibition Act, but not under both for the same act. United States v. Stafoff, supra; 42 Stat. at Large, c. 134, § 5.

[4] It remains for us to consider whether the sections of the customs laws upon which counts 1 and 2 are based in part were reinstated by the Act of November 23, 1921, to the extent that they were superseded by the Prohibition Act, and in particular whether sections 2806, 2807, 2808, 2809, 2871, and 3082, of those laws, are laws relating to "the manufacture and taxation of and traffic in intoxicating liquor," within the meaning of the Act of November 23, 1921. They surely have nothing to do with the manufacture or taxation of intoxicating liquor, and unless they relate to traffic in it they cannot be said to be within the contemplation of the language of the act. Traffic, as defined in Webster's Dictionary, is "commerce, either by barter or by buying and selling; interchange of goods or commodities; trade." In other words, it means "to pass goods or commodities from one person to another for an equivalent in goods or money." Levine v. State, 35 Tex. Cr. R. 647, 649, 34 S. W. 969, 970; 38 Cyc. 934. As the provisions of the customs laws enumerated in counts 1 and 2, which we are considering, relate to the importation of and the collection of duties on commodities, without regard to their sale or exchange for an equivalent —the essential element of traffic—we are of the opinion that these provisions of law were not reinstated by the Act of November 23, 1921.

[5] It is further to be borne in mind that counts 1 and 2 of the indictment are not based simply upon section 3082 and sections 2806, 2807, 2808, 2809, and 2872 of the Revised Statutes, but upon section 3 of title 2 of the National Prohibition Act as well, and that if the defendant was found guilty of violating all or any of these provisions of law the sentence that was imposed upon him under the first two counts must have been under section 3082. It is evident that the infractions of law denounced in section 3082 as "contrary to law" are those defined in the provisions of the customs laws (U. S. v. McKenzie [D. C.] 283 Fed. 667, 668), not those defined in the National Prohibition Act, and that, if the defendant was found guilty under the first two counts of violating section 3 of title 2 of the Prohibition Act, such violation was not an infraction of section 3082. It is also evident that the punishment provided for a violation of section 3 of title 2 is found in section 29 of that title, and is less than that provided in section 3082. It follows that the defendant could not lawfully be tried and sentenced under counts 1 and 2 for a violation of section 3, as a violation of that section is not an act denounced by section 3082, and the punishment provided for such violation in section 29 is less than that provided in section 3082. We therefore regard the first two counts as bad.

[6] Although we regard the third count as good, in so far as it charges a conspiracy to violate the National Prohibition Act, we are of the opinion that the verdict and judgment cannot be sustained as based upon that count. While, as a rule, where a verdict is general, the presumption is that the jury were instructed to pass upon all the counts and base their verdict thereon, the situation here is such that this presumption cannot be indulged; for, as hereafter pointed out, the jury were instructed that they might return a general verdict based on any of the counts, even though they did not find the defendant guilty on the others.

In Commonwealth v. Boston & Maine Railroad, 133 Mass. 383, the case was submitted to the jury upon the third and fourth counts of an indictment and a general verdict of guilty was returned. The trial court instructed the jury that if they should find, upon either one of the two counts, that the commonwealth had sustained the burden which was upon it, they should return a general verdict of guilty, and the defendant excepted. In the Supreme Court it was held that the third count was bad and the fourth good; that, in view of the instructions excepted to, it resulted—

"that the verdict may have been rendered upon proof of facts charged in the third count, which would not be sufficient to support the fourth count; and so, the third count being now found to be bad, the verdict may have been rendered upon proof of facts not charged in, nor admissible in evidence under, the fourth count, which alone was good."

It was there said:

"It is contended, on the part of the commonwealth, that the practice as adopted in Massachusetts requires, or at least sanctions, the submission of the several counts of an indictment for one offense to the jury in this form. "It cannot be doubted that the two counts under consideration are for the same offense. * * * The difference in the details of the negligence charged does not have the effect to show that two offenses are charged.

And it is no doubt a general and beneficial rule of practice, that, where the same offense is charged in different counts of an indictment, the whole indictment may be submitted- to the jury, with instructions, if they find the defendant guilty upon any count, to return a general verdict of guilty. But this rule is not applicable .where one count of the indictment is bad, and the evidence applicable to such bad count is submitted to the jury with the rest, against the objection of the defendant. All such general rules of practice must yield, whenever it appears that the just rights of the defendant are insufficiently protected by them."

[7] In the present case, notwithstanding the offense charged in the third count was different from that charged in the first two, the court instructed the jury that they might find all or any of the defendants guilty on all or any of the three counts; that they could find a general verdict of guilty, and such verdict would be upheld in the way of pleading, if any one of the counts in the indictment was good, and the defendant excepted.

A general verdict and judgment in criminal cases will ordinarily be sustained if one of the counts is good. This is for the reason that "the presumption of law is that the court awarded sentence on the good count only" (Claassen v. United States, 142 U. S. 140, 146, 147, 12 Sup. Ct. 169, 170 [35 L. Ed. 966] ; Commonwealth· v. Carey, 103 Mass. 214, 215, 216); and that the jury were instructed to pass upon each count, and did so in rendering their general verdict (Commonwealth v. Carey, supra). But where an indictment contains several counts, some of which charge different offenses calling for other and different proof, and the record discloses that the court instructed the jury that they might find the defendant guilty on any one of the counts, without requiring them to pass upon the others, and render a general verdict, which would be upheld if any one of the counts was good, and the question is properly saved by exception, the presumption ordinarily indulged in that the jury were instructed to pass upon each count separately and did so (Commonwealth v. Carey, supra), is wanting. In such case, if any count is bad, the verdict must fall, for it cannot be presumed, as in the ordinary case, that the verdict was 'based upon all the counts, so that the verdict and judgment would be good if one of them was sufficient. Here the jury, under the instructions of the court, may have based their verdict on the first two counts, which were 'bad, and such being the case, the judgment cannot be sustained, as the third count charged a different offense from that charged in the first two, and calls for other and different proof. Commonwealth v. Carey, supra.

The instruction excepted to was erroneous, and there must be a new trial.

The judgment of the District Court is vacated, the verdict set aside, and the case remanded to the District Court for a new trial.

ANDERSON, Circuit Judge (dissenting). I cannot bring myself to think that the majority opinion is right, and it seems to involve principles of sufficient importance to warrant a brief statement of my views.

Certain additional facts should be stated in order to make the legal problems clearer. Bruno, who for 20 years had been in the liquor

business in Boston, went to Halifax and bought the schooner Golden West. Amero took her to St. Pierre, where she was loaded with intoxicating liquors. She then sailed, avowedly, for Nassau. But she headed directly for Massachusetts Bay, where she was met by motorboats, and some of the liquor was landed in Massachusetts. There was controversy as to what was done within and without the three-mile limit, and as to the various parts taken in the scheme by the various defendants. But there was no claim of compliance with any of the customs laws, or that the liquor landed was brought in under a permit issued under the Volstead Act. What came in was admittedly smuggled in by somebody. There was, on the undisputed facts, no room for the contention that a jury might have found the customs laws obeyed and the Volstead Act disregarded. Both old and new laws, as to importations, were entirely disregarded.

We have, then, to deal with a simple statutory crime, the illegal importation of intoxicating liquor, after, under the Eighteenth Amendment and enforcing legislation, intoxicating liquor has, for most purposes, been outlawed as injurious to public morals and health. No question of constitutional right or of fairness of trial is involved. The fundamental question is merely of statutory construction—what did Congress intend?

The majority opinion, on analysis, rests on the proposition that Congress intended to lessen the penalty for liquor smuggling. This proposition I cannot accept.

Counts 1 and 2 are based on R. S. § 3082, and charge importation of liquor "contrary to law," in that both the old customs provisions (sections 2806–2809 and 2872) and the later Volstead Act (title 2, § 3) were disregarded. All these statutes, old and new, are, as the District Court charged the jury, subordinate to section 3082, which makes any illegal importation of any merchandise a crime and provides a penalty therefor. The crime charged in these counts would have been precisely the same if we had never had any Volstead Act. The fact that the Volstead Act may furnish an additional ground for charging that this importation was "contrary to law" is entirely immaterial; that part of the counts might have been disregarded as surplusage; it does not vitiate an indictment for smuggling, good without help from the Volstead Act. The crime charged is not, primarily and in essence, the disregard of either the requirements of the old customs law or those of the Volstead Act; it is for illegal importation, however made illegal. One ground of illegality is as good as three or more.

But, apart from this view of the gist of the case, I cannot accept the theory of my brethren that, because section 29 of title 2 of the Volstead Act imposes a less penalty than R. S. § 3082, we are to infer that Congress intended liquor smuggling to be punished more lightly than sugar smuggling or potato smuggling. The majority opinion is in this regard based, of course, on the familiar rule that, when a later act provides a lesser penalty for an offense than an earlier act, the earlier act may be held repealed by implication. But this rule is—like the rule that repeals by implication are not favored—only one subordinate rule of statutory construction. 2 Lewis' Sutherland, Const. of

Sts. § 363 et seq. The controlling rule is, What did the Legislature intend? Compare United States v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043; United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153, and cases cited. And in determining the legislative intent, we must look to the whole act and consider the general results Congress was seeking to accomplish.

"The form of words is not material when Congress manifests its will that certain rules shall govern henceforth." Holmes, J., in United States v. Stafoff, 43 Sup. Ct. 197, 67 L. Ed. ——, January, 1923.

Now section 3 of title 2 of the Prohibition Act provides that:

"All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

This rule of liberal construction, in order to kill traffic in liquor, does not comport with a legislative purpose of lightening the penalties of smuggling into the country what can no longer be constitutionally manufactured, transported, or sold here.

Ordinary smuggling is malum prohibitum—a crime against the revenue laws. Liquor smuggling is, since the Eighteenth Amendment, nearly, if not quite, malum per se, a crime against public morals.

Moreover, the dominant purpose of section 29—held by the majority to supersede or by implication to repeal R. S. § 3082, so far as the importation of liquor is concerned—is not to repeal, but to supplement, existing laws, by providing new penalties for disregard of new requirements. It is not in pari materia with R. S. § 3082; for it is inconceivable that Congress intended to provide a lighter punishment for liquor smuggling than for smuggling ordinary merchandise. Compare 2 Lewis' Sutherland, supra, § 370. The language used must be construed so as to effect, not thwart, the manifest, general legislative purpose. If necessary (as I think it is not) to repel the inference of repeal by implication, resort might be had to the words "for which offense a special penalty is not prescribed." This lanugage would not have been used if Congress had intended by section 29 to provide an inclusive and exclusive set of penalties for all possible violations of law as to liquor.

But, even if there were otherwise doubt as to the intent of Congress, that doubt would be resolved by the language used in section 5 of the Act of November 23, 1921:

"That all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and *all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force,* as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act." (Italics mine.)

This act was, as pointed out in the Stafoff Case, supra, passed to meet the condition created by the decision of the Supreme Court in United States v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043. It declares in the plainest possible terms that Congress intended to buttress the Prohibition Act by continuing all existing penalties and adding others to cover any loopholes otherwise open to contemners of the Eighteenth Amendment and its enforcing legislation. Clearly the old laws against smuggling cannot be "directly in conflict

with any provision of the National Prohibition Act." This act was passed before the offense covered by this indictment. It repels the inference of a repeal by implication; it asserts the exact·contrary.

While, in my view, no question as to reinstating R. S. § 3082, arises, yet, if that problem be involved, I cannot agree that the word "traffic," as used in the Act of November 23, 1921, is not broad enough to cover importation. I think that the word "traffic," as used in section 5 of the Act of November .23, 1921, was intended by Congress to mean essentially the same as the words "sell, barter, transport, import, export, deliver, furnish or possess," as used in section 3 of title 2 of the Volstead Act. There is no conceivable reason for inferring a legislative .purpose to distinguish importation from selling or bartering, etc. Here again the controlling question is, What did Congress intend? And Congress certainly did not intend to favor liquor smuggling, while providing the most drastic machinery to suppress the domestic manufacture, transportation, or sale of liquor.

Finally, if I am wrong in my view that counts 1 and 2 are good, I think this case plainly falls within the scope of section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246), which requires the court to "give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties," and that the judgment should be affirmed on the third count for conspiracy. We are now prohibited from sustaining such highly artificial technicalities as the defense here presented consists of. Under this statute and on this record, the distinction between the conspiracy count and the first and second counts, as construed by the District Court, is purely technical. The case does not, in my view, fall under the doctrine of Commonwealth v. B. & M. R. R., 133 Mass. 382. It comes under the general rule stated by my Brethren that "a general verdict and judgment in criminal cases will ordinarily be sustained if one of the counts is good." Although this indictment contained three counts, yet, as the case was actually tried out, the same acts, proved by the same evidence, constituted offenses under each of the three counts, and the credible evidence was ample to support each and all of the counts. It was not a case of an indictment containing "several counts, some of which charge different offenses calling for other and different proof," the ground on which the majority hold the judgment not sustainable on this third count. Indeed, the main contention of learned counsel for the defendants is that liquor has ceased to be merchandise. I concur with my Brethren that, though outlawed in most respects, for present purposes liquor is still merchandise. That point being ruled against the defendants, nothing remains except claims of technical defects "which do not affect the substantial rights of the parties." We ought to apply the statute (Judicial Code, § 269) and affirm the judgment. See Camp v. Gress, 250 U. S. 308, 318, 39 Sup. Ct. 478, 63 L. Ed. 997; Stetson v. United States, 257 Fed. 689, 693, 168 C. C. A. 639; Bain v. United States (C. C. A.) 262 Fed. 664, 669; Sears v. United States (C. C. A.) 264 Fed. 257, 264; Thompson v. United States, 258 Fed. 196, 201, 169 C. C. A. 264; West v. United States, 258 Fed. 413, 415, 169 C. C. A. 429.